JOHN J. DELANEY V. THE GREAT BEND IMPLEMENT COMPANY.

No. 15,714.    (98 Pac. 781.)

SYLLABUS BY THE COURT.

1. PETITION—*Construction*—*Action ex `Contractu or ex Delicto*. In determining whether a petition states a cause of action *ex contractu* or *ex delicto* it must be considered in its entirety, but with special reference to its prominent and leading allegations. Where the averments make it doubtful whether the action is on contract or in tort every intendment must be made in favor of construing it as an action on contract. The case of *Railway Co. v. Hutchings*, 78 Kan. 758, 99 Pac. 230, followed.

2. SALES — *Breach of Warranty — Damages — Non-negotiable Note*. Where promissory notes given in payment of property sold under a contract of warranty have passed out of the control of the payee the maker may elect to treat them as

valid obligations, notwithstanding they are non-negotiable, and his failure to interpose his defense in a suit brought against him by the holder of the notes will not prevent him from maintaining an action against the payee to recover damages for breach of warranty.

Error from Barton district court; JERMAIN W. BRINCKERHOFF, judge. Opinion filed December 12, 1908. Reversed.

*Lee Monroe,* and *George A. Kline,* for plaintiff in error.
*Osmond & Cole,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: John J. Delaney brought an action against the Great Bend Implement Company, in the district court of Barton county, to recover the sum of $1800. A general demurrer to the petition was sustained. He elects to stand upon his petition, and brings error.

Two grounds are urged in support of the demurrer, the first being that the petition stated a cause of action sounding in tort, and, not having been brought within two years, was barred by the statute of limitations. The petition is inartistically drawn, and reeks with surplusage. Every material fact is reiterated a number of times at great length. In substance, it recites that on July 24, 1903, the defendant, through its agent, C. A. Cutler, took a written order from Delaney to Garr, Scott & Co., of Richmond, Ind., for a thrashing outfit, to be paid for on delivery by notes executed to the Indiana company by Delaney; that afterward, on August 1, and before the machinery was delivered, the defendant sent its agent, Cutler, to the plaintiff again and entered into a verbal agreement with him, by which it agreed to sell him the same machinery at practically the same price, but on slightly different terms, and upon an express warranty that the outfit was to

consist of a good sample separator and other machinery; that it would do first-class work, otherwise Delaney was not bound to accept it; and that the defendant would deliver it at once at Shaffer, Kan., and would make it do first-class work. It is then alleged that the outfit which the defendant shipped to Shaffer failed in divers and sundry respects to come up to the warranty under which it was sold; that it failed to do first-class work; that it consisted of second-hand and worn-out machinery, incapable of doing the work which it was represented to do; that it was tested by the defendant and found worthless, and was in fact never delivered to, nor accepted by, the plaintiff. It is alleged that the plaintiff, who was inexperienced in machinery of this kind, believing and relying upon the statements made by the agent with respect to the character of the machinery, executed and delivered to the defendant, instead of to Garr, Scott & Co., his four promissory notes, each for the sum of $391.25, secured by a mortgage upon his farm in Scott county, believing further that the machinery was in first-class condition and capable of doing good work, and that it would be delivered to him at once at Shaffer; that the defendant sold and indorsed the plaintiff's notes to the J. V. Brinkman Company Bank of Great Bend, for value, before maturity, and that the bank became an innocent purchaser thereof; that notwithstanding the failure of the defendant to deliver the machinery at the time agreed upon, or to comply with its agreement and warranty, it failed to return the notes to him or satisfy the mortgage; and that afterward the bank brought suit against him in Scott county on the notes and procured a judgment foreclosing the mortgage, and was about to sell his land to pay the judgment. Then follows an allegation that the representations of the defendant, made through its agent, concerning the machinery and its fitness to do the work were "false and untrue, and made for the express purpose of taking

advantage of this plaintiff and defrauding him out of his money and property, and that by reason thereof, and the facts as herein set forth, there was and has been no consideration for the said notes and mortgage, and this plaintiff has been and is damaged by reason thereof and thereby in the sum of $1800." The prayer for judgment follows.

The precise question here was before us in the recent case of *Railway Co. v. Hutchings,* 78 Kan. 758, 99 Pac. 230, although the petition in that case was drawn with more care. There were averments sufficient to set up a cause of action for a breach of contract, and averments also that the contracts were executed fraudulently, by reason of which the plaintiffs suffered damage. In that case we held the fact that fraud was averred did not change the action from contract to tort. In the opinion it was said:

"The doctrine is well settled that where a petition contains a good cause of action for a breach of contract the addition of words or averments which are appropriate to a cause of action for a wrong will not change the action from contract to tort. (2 Beach, Mod. Law of Cont. § 1679, note.) And in case of doubt the courts are inclined against construing the pleading as embodying a cause of action for a tort. (*Goodwin v. Griffis,* 88 N. Y. 629; *Austin v. Rawdon,* 44 N. Y. 63.)" (Page 763.)

The following authorities are to the same effect: *Junker v. Fobes,* 45 Fed. 840; *Tuers v. Tuers,* 16 Abbott's New Cases (N. Y.) 464; 4 Encyc. Pl. & Pr. 754, 915. See, also, *St. Louis, I. M. & S. R. Co. v. Sweet,* 63 Ark. 563, 40 S. W. 463, where the action was held to be *ex contractu* for the reason that an action *ex delicto* would have been barred by limitation. The courts generally regard the averments which are appropriate to an action in tort as mere surplusage, where the petition otherwise states a cause of action in contract.

"If the pleading contains allegations stating a good cause of action on contract, the mere fact that it also

9—79 KAN.

contains allegations suitable to an action of tort does not make the action any the less one of contract, and the latter allegations may be treated as surplusage and stricken out." (4 Encyc. Pl. & Pr. 915, and cases cited.)

In the foot-notes on the page from which the foregoing language is quoted it is stated that the true test, where the damages arise from breach of warranty, is "the presence or absence of an averment of intent to defraud, without which the action is one of contract, even though representations are charged to have been falsely and knowingly made," citing *Lindsay v. Mulqueen,* 33 N. Y. Supr. Ct. 485, and *Stitt et al. v. Little et al.,* 63 N. Y. 427. The first of the two cases so holds, but there is no discussion of the question, and the opinion cites no authorities, while in the second the question here discussed is not mentioned. In *McDonough v. Dillingham,* 50 N. Y. Supr. Ct. 493, the well-established rule is recognized that where the allegations make it doubtful whether the action is on contract or in tort every intendment must be made in favor of construing it as an action on contract, and in that case the omission to allege that damages had accrued to the plaintiff by reason of the fraud "is accepted by the court as a circumstance indicating the purpose of the pleader to rely upon the contract as constituting the cause of action." (Page 497.)

Turning to the petition in the case at bar we find the averment that by reason of the fraud "and the facts herein set forth" the plaintiff has been damaged, so that the damages are predicated not alone upon the fraud, but coupled with the facts previously stated, and the inference would seem to be that the pleader did not intend to abandon the facts set up showing a breach of the contract. What seems to us the proper rule in determining this question is stated to be that the pleading "should be construed according to its entire scope and effect rather than according to a single sentence or expression contained therein; and special

consideration should be given to the prominent and
leading allegations." (21 Encyc. Pl. & Pr. 657.) Ap-
plying this rule to the pleading in question, we have no
difficulty in determining that the action is on contract.
Before any reference to fraud occurs the petition states
facts showing a valid contract, upon a good and suffi-
cient consideration, and a breach of the contract. What
is the gravamen of the action? Clearly the breach of
the contract—the failure of the defendant to perform.
In our opinion the petition stated a cause of action on
contract, and the language seeming to indicate the con-
trary must be regarded as surplusage. It follows that
the first ground of the demurrer was not well taken.

The second ground upon which it is contended that
the demurrer was properly sustained is that Delaney
lost his right to maintain an independent action against
the defendant by his failure to defend against the notes
in the suit brought by the bank. One of the exhibits
attached to the petition sets up the proceedings in the
suit in Scott county, showing that he made an appear-
ance in the suit and answered, but before judgment
withdrew his answer. Copies of the notes are at-
tached, from which it appears that each contained a
clause waiving any defense on account of extension of
time of payment, and therefore under the decision in
*Bank v. Gunter,* 67 Kan. 227, 72 Pac. 842, the notes
were non-negotiable.

The question to be decided, therefore, is whether
Delaney was required to interpose his defense to the
notes in the foreclosure suit, and whether his failure to
do so is a bar to his right to maintain this action. Prac-
tically the same question was passed upon in a recent
case which is not cited in the briefs. (*Burgess v. Al-
corn,* 75 Kan. 735, 90 Pac. 239.) That was an action
for a breach of warranty. Notes which were non-
negotiable had been given for the purchase-price of a
stallion. The amount of recovery was arrived at by
taking the aggregate face value of the several notes,

and it was claimed that since one of the notes was never in fact paid, and since, according to the plaintiffs' theory, they were under no legal obligation to pay it, it should have been excluded in arriving at the amount of the damages. The ruling of the court appears from the following extract from the syllabus:

"In an action for the breach of warranty of personal property, where a note given for a part of the purchase-price is otherwise a proper element of damage, it is not rendered incompetent for that purpose by the fact that it is non-negotiable and that the matters pleaded by the plaintiff would constitute a complete defense to an action upon it, where the defendant has sold it and makes no offer to return it." (Syllabus.)

In the opinion Mr. Justice MASON, speaking for the court, said:

"Where the maker of a note to which a defense might be made by reason of a failure of warranty waives the right to repudiate it, no wrong is done the payee by a judgment for its amount unless he is denied the privilege of canceling the note or setting it off against the claim for damages. [Citing *Fahey v. Esterley Machine Company*, 3 N. Dak. 220, 55 N. W. 580, 44 Am. St. Rep. 554.]" (Page 740.)

It was also said in the opinion:

"Here the defendants, having lost control of the third note, and having made no suggestion of an ability or desire to restore it, are in no position to complain of its being treated as valid.

"The right of the maker of a series of non-negotiable notes to defend against them on the ground that they were obtained by fraud or false warranties may be a very inadequate remedy. It would not protect him against being harassed by a number of suits by different individuals, perhaps in different courts, in each succeeding one of which he might be required to establish the facts anew. Justice would ordinarily be promoted by permitting him to choose his own forum and settle the entire controversy in a single action against the person at fault, electing to treat the notes as valid, and to indemnify himself by means of a judgment for damages. Whether or not the maker of a non-nego-

tiable note given in payment for goods may always, upon proof of a breach of warranty or of the practice of fraud upon him, regard the note as a subsisting obligation and recover damages upon that theory, we are satisfied that the plaintiffs in this case were entitled to that privilege. The case of *Batch et al. v. Levy et al.,* 101 N. Y. 511, 5 N. E. 345, seems to tend to support this view, although the discussion there is very brief. On the other hand, *Walsh v. Cooper,* 10 Wash. 513, 39 Pac. 127, has an apparent tendency to the contrary, but the facts are not closely similar to those here presented." (Page 741.)

Of course, the only theory upon which the plaintiff can recover is that he is bound by the judgment against him upon the notes, and by reason of that fact the notes form the basis for his claim of damages. Had he brought this action before suit was begun on the notes he would have been estopped from ever setting up a defense to the notes. (*Davis v. Schmidt,* 126 Wis. 461, 106 N. W. 119, 110 Am. St. Rep. 938.) And, as said in the opinion in *Burgess v. Alcorn, supra,* "it is not clear why he should not have the privilege of treating them as valid obligations if he sees fit to do so. It is difficult to see how the payee has any standing to object unless he accompanies his objection with an offer to return the notes." (Page 739.)

In what respect is the defendant prejudiced by the plaintiff's failure to set up his defense in the suit brought against him by the bank? The notes had passed out of its control, and it was not a party to the suit; although, by reason of the non-negotiability of the notes, it was in privity with the bank. Delaney might have paid the notes when they became due, electing to consider them as valid obligations, without waiving his right to maintain an action against the defendant to recover any damage sustained by its failure to comply with its contract. Having declined to interpose a defense to the notes, and having permitted judgment to go against him thereon, he is in exactly

the same situation as though he had paid the notes to the bank when they fell due, and certainly the defendant is in no worse situation. In such a case, where the notes have passed out of the control of the payee, notwithstanding they are non-negotiable the maker may elect to treat them as valid obligations—pay them or permit judgment to go against him—and have his independent action against the payee to recover for a failure of consideration based upon a breach of warranty.

Our conclusion is that the demurrer was improperly sustained. The judgment is therefore reversed, and the cause remanded for further proceedings in accordance with these views.