FRED WASHBON, as Grand Master, etc., et al., *Appellees,*
v. THE LINSCOTT STATE BANK, *Appellant.*

No. 17,765.

SYLLABUS BY THE COURT.

1. TRUST FUNDS — *Misappropriation — Participation by Bank.*
Where a bank knowingly participates with a depositor in a
misappropriation of trust funds and reaps the fruit of the
breach of trust it becomes liable to the beneficiary for what-
ever loss the latter sustains.

2. LODGE FUNDS—*Defaulting Treasurer—Overdraft—Liability
of Bank.* The treasurer of the grand lodge of Masons de-
posited the funds of the order in defendant bank. With
knowledge that he was a defaulter the bank, for the purpose
of aiding him in concealing his shortage, permitted him to
overdraw his account and issued to him a certificate to be
exhibited to the grand lodge showing that he had on deposit
the amount of the certificate, the bank taking as collateral
security for the overdraft notes representing loans made by
him as treasurer to various individuals. After his reëlection
as treasurer he returned the certificate to the bank, it was
credited to his account, the overdraft was taken up and the
collateral returned to him. Upon his death the grand lodge
for the first time learned that he was a defaulter and sued
the bank for the amount .of the overdraft. *Held,* that the
overdraft was a loan to the treasurer individually, that it
was paid when the account was credited with the proceeds
thereof, and that the bank with knowledge of the trust char-
acter of the fund could not accept any part thereof in pay-
ment of the personal debt of the treasurer and is liable to the
grand lodge for the amount òf the overdraft.

3. ACTION—*Implied Contract—Tort.* An action by the grand
lodge against the bank to recover the amount of such over-
draft, wherein the petition states the facts in ordinary and
.concise language, is *held* to be an action upon an implied con-
tract to refund the money and not in tort nor for relief on
the ground of fraud.

4. ———— *Statute of Limitations—Trust Funds.* Upon the facts
stated the statute of limitations would not begin to run in
favor of the bank against an action to recover the money un-
til the beneficiary discovered the breach of trust.

Appeal from Jackson district court. Opinion filed
July 6, 1912. Affirmed.

*Charles Hayden, I. T. Price, E. D. Woodburn, F. T. Woodburn,* and *A. E. Crane,* all of Holton, for the appellant.

*M. A. Bender,* of Holton, *T. F. Garver,* and *R. D. Garver,* both Topeka, for the appellees.

STATEMENT.

This suit was brought by the officers of the Most Worshipful Grand Lodge of Ancient, Free and Accepted Masons of Kansas, hereinafter referred to as the grand lodge, against The Linscott State Bank, as the successor of The National Bank of Holton, to recover funds deposited in the bank by Albert Sarbach, grand treasurer of the lodge. The controversy is one of several arising out of Sarbach's defalcation as grand treasurer. Some of the legal propositions are the same as those involved in the recent case of *Washbon v. Hixon,* ante, p. 310, 124 Pac. 366. The plaintiffs recovered in the court below and the bank appeals.

Albert Sarbach was first elected grand treasurer in 1903. He was annually reëlected until 1909, and was serving in that capacity at the time of his death, September 11, 1909. He deposited the funds of the grand lodge in and kept his account as grand treasurer with The National Bank of Holton, until the bank was changed to a state bank in 1909, after which he kept the account with The State Bank of Holton. George S. Linscott was cashier of the national bank, and after the change was cashier of the state bank. The officers of the bank knew from a short time after he became treasurer that he was making a wrongful use of the lodge funds and that during a large portion of the time he was short in his accounts. In September, 1903, he loaned $4000 of the funds to Linscott, cashier of the bank, and in 1905 made another loan of $10,000. Linscott gave Sarbach his individual notes for these loans, which were afterwards repaid with interest. At each annual meeting of the grand lodge it was necessary, as

the officers of the bank well knew, for Sarbach to make his annual report as treasurer and produce the funds or evidence that he had on hand the amount due from him as treasurer. In order to enable him to satisfy the officers of the grand lodge that the funds were intact the bank aided him in concealing the shortages by issuing to him for temporary purposes certificates of deposit or certified checks for the amount he should have had on hand, without regard to the actual balance in his bank account. The bank extended credit to him for the deficit in his account, taking from him collateral security therefor. After his reëlection as grand treasurer and upon his return from the annual meeting the certificate of deposit or certified check would be indorsed by him officially and deposited in the bank, the collateral security would be returned to him, and the books of the bank would show no overdraft. In February, 1904, the certified checks issued to him amounted to $30,440, which was the sum he should have had on hand, but was for $7734.96 more than he had in the bank. In February, 1905, the certificate of deposit which he presented to the grand lodge was for $17,950.81 more than he actually had in the bank. In February, 1906, the bank gave him a certified check for the purpose of exhibiting to the grand lodge, which called for $9087.43 more than he actually had in the bank.

The foregoing transactions are not involved in this suit and have been mentioned merely for the purpose of showing the course of dealing between the bank and Sarbach. The controversy arises over two transactions. On February 16, 1907, the bank issued to Sarbach a certificate of deposit for $29,185.97, which overdrew his account $4,465.76. To secure this overdraft he deposited with the bank as collateral security a number of notes payable to him as grand treasurer, executed by individuals to whom he had made loans. On February 23, after his settlement with the grand lodge and his

reëlection, he deposited the certificate for $29,185.97 in his account. The bank returned to him the collateral securities and paid to itself the overdraft out of the proceeds of the certificate. The trial court held, that the $4465.76 overdraft was a loan made by the bank to Sarbach personally, that it constituted an individual debt, payment of which could not lawfully be made out of funds which· the bank knew belonged to the grand lodge. There was another overdraft on January 2, 1908, of $934.09, which was afterwards paid out of collections made by Sarbach ·as grand treasurer, which he deposited in his account, and the trial court likewise ruled that the bank, with knowledge of the trust character of the deposit, could not apply it in payment of Sarbach's individual debt. The judgment in plaintiff's favor was for the sums involved in these two transactions. The trial court made very complete findings of fact, which are too lengthy to be reproduced here. Among them are the following:

"12. At the time of his death in September, 1909, Albert Sarbach was a defaulter in his account as Grand Treasurer to the amount of $16,358.99. His account as Grand Treasurer with the State Bank of Holton was at that time overdrawn in the sum of $2,707.48, and it had been overdrawn continuously from and after April 10, 1909. . . . On the evidence, I find that at· the time of his death Albert Sarbach had misappropriated.all of the funds of the Grand Lodge which he should have had on hands at that time, and that such misappropriation was made without the knowledge or consent of the plaintiffs or the other officers of said Lodge and they had no knowledge or notice thereof until after his death.

"13. At the time the checks of Albert Sarbach, as Grand Treasurer, on the National Bank of Holton were certified, and when the certificate of deposit of February 16, 1907, was issued, the .officers of said bank knew that Albert Sarbach was Grand Treasurer of .the Grand Lodge of Masons of Kansas, and knew that he had to make annual reports to said Lodge as such Treasurer. When such checks were certified and certificates of deposit were issued, the officers of said bank

also knew that such instruments were wanted by Sarbach for the purpose of showing that he had the amount of money, represented by each of said instruments, on deposit to his credit as Grand Treasurer at the time they were issued or certified, respectively.

"14. The overdraft resulting from the certifying of such checks and the issuing of such certificates of deposit for amounts greater than Sarbach had at the time, to his credit, as Grand Treasurer, in said bank, were allowed to him as loans, he at the time turning over to said bank notes of solvent parties, payable to him as Grand Treasurer, which he held for money of said Grand Lodge which he had loaned to different persons, such notes being in amount at least equal to the particular overdraft for which they were given as security. When the certified checks and certificates of deposit were returned and credit for the amount given to Sarbach, as heretofore found, the notes which had been put up as security therefor were returned to Sarbach. The evidence does not show what disposition was made of such notes after they were so returned to Sarbach.

"15. The officers of said, The National Bank of Holton, knew that Albert Sarbach checked out moneys at different times, from his said account as Grand Treasurer, for the purpose of making loans thereof to various outside parties. The first loan of that kind was to George S. Linscott, then cashier of the National Bank of Holton, in September, 1903, for $4,000.00, for which Linscott's note was taken, payable to Albert Sarbach, Grand Treasurer. Another loan of $1,000.00 was made to George S. Linscott in March, 1904, and in March, 1905, a loan of $10,000.00. These loans were repaid, with interest, and the amounts credited in the Sarbach Grand Treasurer account with the bank. The evidence does not show any loans to third parties, either made or paid back after May 21, 1906. Sarbach never accounted to the Lodge for any interest received on any such loans. This use of the Grand Lodge moneys were unauthorized by the Grand Lodge, and was without notice or knowledge on its part, or on the part of the officers having control of the Lodge funds.

"Several of said notes were from time to time sold by said Albert Sarbach, Grand Treasurer as aforesaid, to said National Bank of Holton for the face thereof

with accrued interest thereon, and in each instance the amount so paid by said bank therefor was placed to the credit of said account of Albert Sarbach, Grand Treasurer, in said bank."

The trial court made the following conclusions of law:

"1. The use which Albert Sarbach made of the funds of the Grand Lodge in loaning the same to third parties was wrongful and an unlawful misappropriation thereof.

"2. The several overdrafts allowed by the National Bank in order to make up the amounts of the several certified checks and certificates of deposit which were given Sarbach for his annual accountings and the overdrafts of January 4, 1907, and January 2, 1908, were personal loans to the amount of such overdrafts for the payment of which the Bank had no legal right to appropriate the funds of the Grand Lodge.

"3. When Sarbach's check for $13,286.74, certified in February, 1906, and the certificate of deposit, issued in February, 1907, were returned by him and the amounts credited to his account as Grand Treasurer, it was the same as the deposit of such amounts in bank bills, as funds of the Grand Lodge, and could not legally be applied to the payment of the overdraft loans made to Sarbach.

"4. The bank is presumed to know, in the absence of a showing of special authority, that Sarbach, as Grand Treasurer, had no authority to make loans on account of the Grand Lodge, or to pay loans, which were personal to himself, out of Grand Lodge moneys.

"5. The National Bank of Holton, by reason of the payment, out of lodge funds, of the several overdrafts, of February 16, 1907, and January 2, 1908, amounting to $5,399.85 became liable for the repayment thereof, with interest, to said Grand Lodge.

"6. The Linscott State Bank, defendant herein, is the legal successor of the National Bank of Holton and is answerable in this case for such liabilities of the National Bank.

"7. The plaintiff should have judgment for said sum of $5,399.85 with interest on $4,465.76 from February 23, 1907, and on $834.09 [$934.09] from Jan-

uary 9, 1908, to which conclusions of law and each thereof separately the defendant at the time excepted."

Thereupon the court rendered judgment against the defendants for $6760.82, with interest at six per cent per annum, and costs of suit.

The grand lodge having been reimbursed in full by a surety company, the suit is now being prosecuted in the name of the officers of the grand lodge for the benefit of the surety company.

The opinion of the court was delivered by

PORTER, J.: The appellant makes the claim that the suit is for the conversion of personal property and is barred by the two-year statute of limitations; and further, that if it be held to be an action for relief on the ground of fraud it is not assignable and therefore can not be maintained by the surety company. But this is not an action in trover to recover the identical moneys converted by appellant to its own use. On the contrary, it is a suit upon an implied contract, waiving the tort. When property of another has been converted there is always an implication of an indebtedness, and the injured party may waive the tort and sue for the value of the property. (*Douglass v. Loftus, Adm'x,* 85 Kan. 720, 725, 119 Pac. 74.) The petition states the facts which, it is claimed, show the appellant's liability, and it is well settled that if any doubt exists as to the nature of the action the courts incline toward holding it an action in contract (*Delaney v. Implement Co.,* 79 Kan. 126, 129, 98 Pac. 781, and cases cited), and will sometimes do this for the declared purpose of avoiding the statute of limitations (*St. Louis, I. M. & S. R. Co. v. Sweet,* 63 Ark. 563, 40 S. W. 463, cited in the opinion in *Douglass v. Loftus, Adm'x,* supra, p. 727; *Mc-Combs v. Guild, Church & Co.,* 77 Tenn. 81; *John H. Alsbrook v. M. Hathaway, Ex'r,* 35 Tenn. 454).

In the last case it was held that debt would lie for the value of the chattels converted, "let the conse-

quences as to the statute of limitations be what they may." (p. 457.)

Of course, the participant in a breach of trust can not, any more than can the unfaithful trustee himself, invoke the defense of the statute of limitations. (*Duckett v. Mechanics' Bank*, 86 Md. 400, 411, 38 Atl. 983, 63 Am. St. Rep. 513, 522, and cases cited in note on page 523.)

The case of *Guernsey v. Davis*, 67 Kan. 378, 73 Pac. 101, fully answers both of the foregoing contentions of appellant. It was there ruled in the syllabus:

"If an agent of a loan company violate his instructions and misappropriate money sent him for the purpose of closing a loan, the money may be recovered in an action as for money had and received.

"The statute of limitations does not begin to run against such an action until the principal has knowledge of the agent's wrong.

"One who actively participates in an agent's breach of trust, with full knowledge of the agent's duty, and thereby obtains possession of the principal's money, which he misappropriates, incurs the same liability to the principal as does the agent." (Syl. ¶¶ 1-3.)

It was said in the opinion that "it was not necessary that the action be regarded as for relief on the ground of fraud" (p. 380) because the petition stated facts sufficient to constitute an action for money had and received. So in the present case the petition contains a statement in ordinary and concise language which would entitle the appellees to recover for money had and received. The statute of limitations applicable to actions for the conversion of personal property therefore furnished no defense. Until Sarbach's death the officers of the grand lodge had no knowledge of his embezzlement or of the fact that the bank had wrongfully appropriated its funds. The statute of limitations against a suit such as this is would not begin to run until the principal had knowledge of the agent's wrong. (*Guernsey v. Davis*, supra.) And as held in

45—87 KAN.

the case last cited it is not necessary to regard the
suit as an action for relief on the ground of fraud.
The surety company, having paid the debt owing by
the bank to the grand lodge, is in equity subrogated to
all the rights of the original plaintiff regardless of any
formal assignment. We see no reason, however, why
the cause of action, being for money had and received,
was not assignable. (*Stewart v. Balderston,* 10 Kan.
131.)

Upon the facts as stated the learned judge of the
court below rightly held that the bank loaned to Sar-
bach the amount of the overdraft and that the certifi-
cate of deposit when issued by the bank became the
property of the grand lodge. If some other person had
been elected treasurer and the certificate turned over
to him by Sarbach there could be no doubt as to the
bank's liability to pay to Sarbach's successor or to the
grand lodge the full amount of the certificate and that
it would be obliged to look to Sarbach individually for
payment of the overdraft. The fact that Sarbach was
chosen to succeed himself did not alter the situation,
nor did his reëlection change the ownership of the cer-
tificate or affect the bank's indebtedness to the grand
lodge. When Sarbach deposited the certificate in the
bank and endorsed it as grand treasurer the officers of
the bank knew that the funds belonged to the grand
lodge and that he had no personal interest in any part
of it. (*Washbon v. Hixon,* ante, p. 310, 124 Pac. 366.)
As a matter of fact the officers had full knowledge of
the situation without reference to the character of the
endorsement upon the certificate. With knowledge
of the trust character of the deposit the bank could not
lawfully receive the proceeds of the certificate or any
part thereof and apply it in payment of the individual
debt which Sarbach owed to it for the overdraft. In
*Washbon v. Hixon,* supra, Sarbach gave Mrs. Hixon
a check on the bank signed by himself as grand treas-
urer in payment of an individual note he was owing

her. It was held that the official signature of the check was notice to her of the trust character of the funds and the grand lodge was permitted to recover from her the amount of the check. (See, also, *Guernsey v. Davis,* 67 Kan. 378, 73 Pac. 101; *Bank v. Myers,* 65 Kan. 122, 69 Pac. 164; *Loan Co. v. Essex,* 66 Kan. 100, 71 Pac. 268; *Hier v. Miller,* 68 Kan. 258, 75 Pac. 77; *Gerard et al. v. McCormick,* 130 N. Y. 261, 29 N. E. 115; 21 A. & E. Encycl. of L. 584.)

Upon the same principle it is held by an unbroken line of authorities that a purchaser from a trustee with notice takes the property impressed with the trust and his position is no better than that of his vendor. (2 Perry on Trusts and Trustees, 6th ed., § 828.) In *Union Stock Yards Bank v. Gillespie,* 137 U. S. 411, 34 L. Ed. 724, the bank received on deposit from a factor funds which it must have known were the proceeds of property of the factor's principal, and it was held that the bank could not appropriate the deposit to the payment of a general balance due the bank from the factor and if it attempted to do so the principal had his remedy in equity.

It can not be doubted that the credit given to Sarbach as grand treasurer for the amount of the certificate by the bank which issued it was a payment of the certificate.

"A credit given for the amount of a check by the bank upon which it is drawn is equivalent to, and will be treated as, a payment of the check. It is the same as if the money had been paid over the counter on the check, and then immediately paid back again to the account or for the use for which the credit is given." (2 Morse on Banks and Banking, 4th ed., § 451.)

(See, also, *Bartley v. State,* 53 Neb. 310, 338, 73 N. W. 744; *Oddie v. The Nat. City Bank of New York,* 45 N. Y. 735.)

A case cited by appellees which is in point is *Town of East Hartford v. The American National Bank,* 49

Conn. 539.   There a town treasurer made notes as treasurer without authority of the town, which were discounted by the bank and the proceeds placed to his credit as treasurer.   The bank afterwards received his checks as treasurer in payment of the notes.   He became a defaulter for the amount drawn by him to pay the notes.   Although in that case the bank acted in good faith, supposing that he had authority to make the notes, and the proceeds were used for the town's benefit, it was held that the bank was charged as a matter of law with notice that he had no power to execute the notes or to pay them, that they were to be treated as his individual notes, and that the bank had no right to retain the money against the demand of the town.

Whatever the arrangement was by which the bank surrendered to Sarbach the notes left with it as collateral security for the loan of the overdraft, it can not be said that the grand lodge seeks by this suit to rescind an agreement made in its behalf by its agent and at the same time retain the fruits thereof.   The bank loaned the overdraft not for the benefit of Sarbach's principal but for the purpose of enabling Sarbach to conceal from his principal the defalcation.   It said to the grand lodge, "We have on deposit to your credit the full amount of this certificate."   The grand lodge, believing the representation, continued the unfaithful steward in office.   The bank's participation in the fraud did not stop there; it entered into a secret arrangement with the defaulter by which the bank's liability for the shortage would not be shown upon its books and it surrendered the collateral which it held as security for the loan.   When it attempted to repay to itself the individual debt which Sarbach owed, out of funds which it is forever estopped to deny belonged to the grand lodge, it became liable to refund the money upon the same principle which obliged Mrs. Hixon to restore to the grand lodge the proceeds of the check

she received in payment of Sarbach's individual debt. The bank knew that the money it received was a trust fund which Sarbach could not divert to his own use.

The bank's liability in the transaction respecting the overdraft of $934.09 is governed by the same principles of law. If there were no other facts in evidence save that Sarbach overdrew his account in January, 1908, and afterwards deposited collections which balanced the overdraft, and the bank thereafter cashed other checks drawn by him which left his account again overdrawn, there would be left the single question whether the grand lodge could recover from the bank the amount of an ordinary overdraft by an agent which on its face had been paid out for the benefit of the principal. But in view of all the evidence as to the course of dealing between the bank and Sarbach we must hold that the bank is liable for the overdraft of January, 1908, which, it seems, was paid with the bank's knowledge out of the moneys received directly from the grand secretary.

There is nothing substantial in the claim that the grand lodge is estopped. No estoppel was pleaded in the answer. It is argued, however, that the grand lodge claims the proceeds of the bank's loan to Sarbach of the overdrafts and ought not to be permitted at the same time to repudiate that part of the agreement between Sarbach and the bank by which the collateral notes deposited by him to secure the overdraft were returned to him when the overdraft was wiped out. This argument is based upon the assumption that the grand lodge in some way received the benefit of the collateral notes. The court, in finding number fourteen, states that the evidence fails to show what disposition was made of the notes after they were returned to Sarbach. There is a further finding, number fifteen, that Sarbach never accounted to the grand lodge for interest received on any such loans and that this use of the funds was unauthorized by and without

notice to the grand lodge or its officers, and further, that the bank from time to time bought several notes of this character from Sarbach. The bank must have known that Sarbach had no authority to loan these trust funds to any person or for any purpose. It participated in the fraudulent use of the moneys for its own profit, and we are at a loss to discover how the bank can urge that the grand lodge must return notes which it never received and which were given for. unauthorized loans from its funds with the full knowledge and participation .of the bank. The loan of the overdrafts was not made for the benefit of the grand lodge, but solely for Sarbach's benefit. The grand lodge, as the bank well knew, was not in need of ·any loans, and the bank also knew that the purpose of the loan was to enable Sarbach to perpetrate a fraud upon the grand lodge. Where a bank knowingly participates with a depositor in a misappropriation of trust funds and reaps the fruit of the breach of trust it becomes liable to the beneficiary for whatever wrong is done him.

The judgment is affirmed.

MASON, J., not sitting.