No. 30,694.

AMY O. RAFTER, *Appellant,* v. ROBERT J. HURD, JAMES T. RAFTER and THE RAFTER FARM MORTGAGE COMPANY, *Appellees.*

(12 P. 2d 837.)

Opinion filed July 9, 1932.

*Frank G. Drenning, Oscar Raines,* both of Topeka, and *E. D. Woodburn,* of Holton, for the appellant.

*M. A. Bender* and *Minnie M. Banks,* both of Holton, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover money. It was in seven counts. Judgment was for plaintiff on the first count and for de-

fendants on the second, third, -fourth, sixth and seventh counts. The fifth count was dismissed. Both parties appeal.

The action grows out of the operations of the Rafter Farm Mortgage Company and the sale of a share of the assets and stock of this company to James T. Rafter and Robert J. Hurd by Amy O. Rafter, the widow of DeVere. Rafter.

Count one is an action to recover for alleged fraud and misrepresentation on the part of Robert J. Hurd and James T. Rafter in the sale of a farm belonging to Amy O. Rafter.

In counts two, three and six plaintiff seeks to recover for assets concealed by defendants in the purchase of the capital stock and assets of the Rafter Farm Mortgage Company from plaintiff on August 27, 1919.

Counts four and seven are to recover on second mortgages alleged to have been sold and warranted to plaintiff by defendants as good and collectible mortgages, but which turned out to be of no value.

We will notice count one first. This count alleges that in September, 1919, plaintiff owned a farm; that she made a written contract with Robert Hurd whereby Hurd was to secure a purchaser for this farm; that Hurd did find a purchaser for the land and on behalf of plaintiff entered into a contract with this purchaser for the sale of the farm on terms that were satisfactory to her; that in order to carry out the terms of this contract she conveyed the farm to the Rafter Farm Mortgage Company; that before the terms of this contract were carried out defendants, without her consent or knowledge, made a different contract with the buyer of the land whereby they conveyed the land to him; he borrowed money on it and gave plaintiff a second mortgage. The count alleged that the receipts of the mortgage placed on the land by the buyer were paid to the Rafter Farm Mortgage Company and that after this company paid a prior mortgage of a small amount the balance of this money was converted by defendants to their own use. It was alleged that defendants delivered to plaintiff a mortgage known as the Law Higley mortgage; and that the land covered by this mortgage was already covered by a mortgage for all that the land was worth. The petition alleged, also, that plaintiff tendered back the Law Higley mortgage. The petition alleged that plaintiff did not discover that defendants had appropriated this money to their own use till 1929.

The answer of defendants to this count was a general denial and

a statement that Amy Rafter was advised and informed as to every step in the transaction. The defense of the statute of limitations was also pleaded. Trial was to the court. The following findings of fact were made:

"That on and prior to the 25th day of September, 1919, the plaintiff was the owner of the west 100 acres of the southeast quarter (SE¼) of section nine (9), in township six (6), of range fourteen (14) in Jackson county, Kansas. That at said time there was a first-mortgage lien on said real estate payable to Trevett, Mattis & Baker, and interest thereon, in the sum of $600; that the defendant, Robert J. Hurd, secured a purchaser, one L. H. Cashman, for said 100 acres of land and informed the plaintiff thereof, whereupon the plaintiff appointed, constituted and directed said Robert J. Hurd to sell said lands and directed him in her behalf to enter into a written contract of sale with said purchaser, which he did, signing said contract, 'Amy O. Rafter by R. J. Hurd.' That said contract provided, among other things, that the purchaser was to pay to the plaintiff $9,000 for said lands, as follows: $500 in cash; $500 January 1, 1920; $500 March 1, 1920, and $500 annually until $4,500 was paid, and that upon the payment of $4,500 by the purchaser to said Amy O. Rafter the said Amy O. Rafter would execute a deed of conveyance to the purchaser whereupon the purchaser would execute the said Amy O. Rafter a first-mortgage lien on said real estate in the sum of $4,000, the balance of the purchase price for said land.

"That after said contract referred to in finding number ten was made and $1,500 paid thereunder by L. H. Cashman, the purchaser concluded that he would not comply with the terms of said contract, whereupon said L. H. Cashman and the defendant, Robert J. Hurd, entered into another contract concerning the sale to said L. H. Cashman of said lands and the purchase price therefor to be said sum of $9,000 and to be paid as follows: $1,500 cash; heretofore paid; an application to the purchaser to the Bartlett Brothers Land & Loan Company of St. Joseph, Mo., for $3,500 and the execution of a second-mortgage lien on said land by the purchaser to Amy O. Rafter, in the sum of $4,000. That said loan was made to Cashman by the Bartlett Brothers Land & Loan Company in the sum of $3,500 less $52 expense; the remittance thereof was made to the defendants by said Bartlett Brothers Land & Loan Company, and the defendants out of said remittance of $3,477.50 paid $615 to Trevett, Mattis & Baker, to satisfy the first-mortgage lien on said real estate, and placed the balance of said remittance from said loan to their credit.

"That to satisfy Amy O. Rafter for the full purchase price of said lands in the sum of $9,000 she had received $1,500 cash, the payment of the first-mortgage lien in the sum of $615, a second-mortgage lien in the sum of $4,000 on said lands and a second mortgage on other land in the sum of $3,000 known as the Law Higley mortgage.

"At all times hereinbefore mentioned in this finding the defendants and said Robert J. Hurd were the confidential advisers and agents of the plaintiff. The defendants, nor any of them, made known to the plaintiff in an understandable explanation the change of the original contract.

"The defendants received from Bartlett Brothers, by virtue of the mort-

gage executed by L. H. Cashman and wife, $3,447.50 and out of said sum paid to Trevett, Mattis & Baker on their first-mortgage lien, $615, leaving a balance in the hands of the defendants which has not been accounted for to the plaintiff, and that the plaintiff, Amy O. Rafter, never at any time accepted the Law Higley second-mortgage lien as a part of the purchase price for her land, and that the plaintiff is entitled to recover from the defendants the sum of $2,832 with interest at 6 per cent from March 1, 1929."

On these findings judgment was rendered for plaintiff in the amount of $2,832.50. From that judgment defendants appeal. They urge as error that the claim is barred by the statute of limitations. It is argued that the action is to recover on a tort, that the statute begins to run when the tort is committed. (*Railway Co. v. Dale,* 68 Kan. 108, 74 Pac. 596, and *Becker v. Porter,* 119 Kan. 626, 240 Pac. 584.)

They also argue that if the action should be construed to be on a contract, express or implied, then it is still barred by the statute. They cite *Railway Co. v. Grain Co.,* 68 Kan. 585, 75 Pac. 1051. There the court said:

"The action accrues when the contract is violated and not at the time when the plaintiff learns that it has been violated. In the absence of a statute making concealment an exception to the statute of limitations, the courts cannot create one, however harsh and unequitable the enforcement of the statute may be." (p. 591.)

The findings of fact of the trial court bring this case within the rule laid down in *Guernsey v. Davis,* 67 Kan. 378, 73 Pac. 101. In that case two agents retained money that had been intrusted to them for the purpose of releasing certain liens. Suit was brought by the loan company to recover this money. The defense of the statute of limitations was made. It was argued that in order for the statute not to bar the action it must be for relief on the ground of fraud, and that the allegations of the petition were insufficient to warrant relief on that theory. The court said:

"It was not necessary that the action be regarded as for relief on the ground of fraud. The petition contained a statement in ordinary and concise language of facts sufficient to constitute a cause of action as for money had and received. Since the money was received by Millikan as agent of the company, the statute of limitations did not commence to run until the principal had knowledge of the agent's wrong. (*Perry v. Smith,* 31 Kan. 423, 2 Pac. 784); and since, with full knowledge of all the facts, Guernsey actively and efficiently participated in Millikan's breach of trust, the same rule applies to him. Therefore, the petition is sufficient, and the action was not barred." (p. 380.)

This case was quoted from and followed in *Washbon v. Bank,*

87 Kan. 698, 125 Pac. 17. See, also, *Peyton v. Chase National Bank,* 124 Kan. 763, 262 Pac. 595. The pleadings and findings of fact in this case make out an action for money had and received within the rule announced in these cases.

Defendants argue further that should the action be construed as one for money had and received, still plaintiff had knowledge of the manner in which the deal had been handled more than three years before the action was brought. The answer to that argument is that this is a question of fact which the court settled by its findings. We, therefore, find no error in the judgment of the court as to count one.

We now pass to a consideration of the remaining counts of the petition. At the time of the death of De Vere Rafter in February, 1919, he was president and general manager of the Rafter Farm Loan Company. Shortly after the death of De Vere Rafter plaintiff started negotiations with Robert Hurd and James Rafter, her brothers-in-law, for the sale to them of the stock and assets of the company. They were unable to agree on the value of the stock and assets. Another brother-in-law, one J. C. Weedon, was brought from Washington to make an audit of the company and ascertain the value of its capital stock and assets. He arrived at a value of $14,000, which was accepted by all parties. The second count of this petition is a charge that James Rafter and Robert Hurd had knowledge of sixty shares of stock in the Kansas Life Insurance Company, which the company owned, and which was not disclosed to her or to Weedon at the time the value of the company was being ascertained. The petition charged that this stock was either the property of De Vere Rafter or of the company. The theory of the count is that in either case the amount that plaintiff received for her share of the company was wrongfully reduced by the amount of the value of the stock. The answer to this was a general denial, and a statement that the stock was the property of the company.

Upon the issue thus framed the court made the following finding of fact:

"That at the date of the death of the said De Vere Rafter, the defendant, the Rafter Farm Mortgage Company, was the owner of sixty shares of stock of the Kansas Life Insurance Company, which was thereafter disposed of. That the value of the Kansas Life Insurance Company stock was discussed and considered by J. C. Weedon with the defendants, as well as all other assets of said company, and fully accounted for in said sale. That no assets of the

Rafter Farm Mortgage Company were concealed by any of said defendants fiom J. C. Weedon or the plaintiff."

On this finding of fact judgment was rendered for Rafter and Hurd on count two.

The error of which Amy O. Rafter complains is that this finding is contrary to the evidence. At the time this action was tried Weedon was dead. James T. Rafter and Robert J. Hurd both testified to facts that warranted the court in making the above finding. Another error urged in connection with this count is the failure of the court to make certain requested findings of fact. Some of these findings were as to matters about which there was no dispute and some were matters upon which there was conflicting evidence. This court has held so many times, that space will not be taken up with the citation of authorities, that it will not weigh conflicting evidence with a view to reaching a different conclusion as to facts than that reached by a trial court.

We will consider count three. In this count plaintiff charged that in 1919 she purchased a note and mortgage from the company for $5,500; that this note and mortgage were not assigned to her, but were carried on the books of the company; and that when the sale of the assets and capital stock was made this note was not included among the assets of the company, nor was it delivered to her. She claimed judgment in this count for $5,500. The answer of defendants to this count was a general denial and a statement that the note and mortgage were among the assets of the company and fully accounted for. Upon these issues the court made the following findings:

"That on February 21, 1919, the Rafter Farm Mortgage Company purchased what is known as the McCaslin $5,500 mortgage, mentioned in plaintiff's third cause of action. That in April, 1919, at the request of the plaintiff, said mortgage was sold and assigned to the plaintiff, and she paid therefor. That the proceeds received from said McCaslin mortgage were placed in the funds of the Rafter Farm Mortgage Company and thereafter duly and fully accounted for in the settlement and sale of the interests of the plaintiff therein by the said Rafter Farm Mortgage Company."

On this finding judgment was entered for defendants. The same error is urged here as was argued with reference to the second count. The same statement applies to this argument as was applied to that.

We will consider the fourth count. In this count plaintiff charged that defendant Hurd transferred to her a note and mortgage known

as the Ristow note and mortgage, for $2,000, as part of the pay for her share of the assets of the company; that defendant represented this note and mortgage to be a good note and mortgage and a second mortgage, when as matter of fact it was a third mortgage and turned out to be worthless, there being a first mortgage for $6,000 and a second mortgage for $600 superior to it. The answer of defendants to this charge was a general denial and an allegation that plaintiff had foreclosed this mortgage against the advice of defendants; that she had recovered her judgment and still held it. On the issues thus drawn the court made the following findings of fact:

"The plaintiff secured from the defendant, Robert J. Hurd, what is known as the Ristow mortgage, being a part of the purchase price by him paid to the plaintiff for her interest in the Rafter Farm Mortgage Company. Said mortgage was for the sum of $2,000, which was delivered to her, she taking charge thereof, and placed the same in her private box, and the defendant, Robert J. Hurd, continued to collect interest thereon and remit to plaintiff until June 1, 1926, when default was made by said Ristow in the payment of his interest.

"That at the time said Robert J. Hurd assigned said Ristow mortgage mentioned in finding fourteen, to the plaintiff, he informed her that there was a $6,000 first mortgage on said land and a commission mortgage of $600.

"That the plaintiff, upon said default of interest, foreclosed her said mortgage, on or about February 25, 1929, and obtained judgment against Ristow for the amount of her claim, which judgment she still holds; that at the time said mortgage was so transferred to the plaintiff, the land described therein was reasonably worth the sum of $12,000."

On this finding judgment was entered for defendants. The error that plaintiff urges against this judgment is that the court should have made certain requested findings. These findings, as was said herein with reference to those requested on count two, were partly on matters not in dispute and partly on matters about which there was conflicting evidence. Under the circumstances it was not error to refuse to make them. Plaintiff also urges as error in this connection that this finding is indefinite. It is pointed out that the finding does not state whether the Ristow mortgage was a third or second mortgage. This objection is not good. Findings of fact are intended to determine the issues raised by the pleadings. This finding does that. No one in connection with this case has the least doubt as to what was found.

The fifth count was dismissed.

We will consider the sixth count. In this count plaintiff charged that at the time of the death of DeVere Rafter he was the owner of

all the stock of the Rafter Farm Mortgage Company except four qualifying shares owned by directors; that defendant, James Rafter, represented to her that he owned half the stock of the company; that this statement was false, but she believed it, and transferred half of the stock of the company to defendant, James Rafter, without receiving anything for it. It was further charged that defendants represented that the assets of the company were worth $14,000 and induced plaintiff to sell them on that basis, when as a matter of fact they were worth $50,000. In answer to these charges, defendants alleged that J. C. Weedon was the agent of plaintiff in settling the affairs of the company; that they declared every asset of the company and that as a matter of fact plaintiff was paid more for her shares in the company than they were worth. On these issues the court made the following findings of fact:

"1. The defendant, the Rafter Farm Mortgage Company, is a corporation engaged in making farm loans and selling the same to investors, and has been engaged in such business during the times complained of in the second amended petition of the plaintiff. The plaintiff, Amy O. Rafter, is the surviving widow of DeVere Rafter. That prior to the death of DeVere Rafter, which occurred in February, 1919, the Rafter Farm Mortgage Company's business was operated by the said DeVere Rafter and the defendant, James T. Rafter, they being owners in equal shares of the stock and assets of said corporation.

. . . . . . . . . . . . . .

"5. That the said J. C. Weedon came to Holton in August, 1919, and about three weeks was spent in auditing the books of the Rafter Farm Mortgage Company, and after completing the same the value of the plaintiff's interest in said corporation and its assets was determined by J. C. Weedon, the agent of the plaintiff, at $7,000, whereupon the defendant Robert J. Hurd purchased the interest of plaintiff in said corporation for said sum of $7,000 and paid the same by paying $2,500 in cash, and turning over to the plaintiff notes in the sum of $2,500 and a note and mortgage known as the Ristow mortgage in the sum of $2,000.

"6. That the plaintiff frequently talked to the defendants and to her agent, J. C. Weedon, during the time the books of said company were being audited, and the plaintiff was fully informed at all times concerning all matters involved.

. . . . . . . . . . . . . .

"17. That at the time of the sale by the plaintiff to the defendant, Robert J. Hurd, of her interest in the business and assets of the Rafter Farm Mortgage Company, the plaintiff was represented by her agent, J. C. Weedon; that the defendants fully advised the plaintiff and said J. C. Weedon of such assets and property belonging to the Rafter Farm Mortgage Company, and that no fraud nor concealment of facts was practiced by the defendants.

. . . . . . . . . . . . . .

"20. That in all of the transactions sued upon in this action and upon which these findings are based, the defendants, or none of them, acted as the

plaintiff's agent, except in the transaction for the sale of plaintiff's farm, mentioned in finding number ten."

On these findings judgment was entered for defendants. The error complained of is that the findings are not supported by the evidence. It would prolong this opinion to an unnecessary length to go through four volumes of abstracts, supplemental abstracts and counter abstracts and point out the exact statements and circumstances which do sustain these findings. Suffice it to point out once more that this court will not weigh conflicting evidence with a view to reaching a different conclusion on the facts than was reached by the trial court; neither will it overturn a finding of fact which is sustained by substantial evidence.

We will now consider count seven. In this count the petition charged that in 1920 defendants collected $2,800 for her and invested it in a mortgage, known as the Kennedy mortgage; that defendants represented this was a second mortgage, but was a good mortgage and that the first mortgage was for $6,500, and that plaintiff relied on these statements, when as a matter of fact the mortgage was a third mortgage. The first mortgage was for $7,200 instead of $6,500 and plaintiff never has been able to collect the mortgage. In answer to these charges defendants alleged that plaintiff was advised the mortgage was a third and that the first was for $7,200, and they denied any misrepresentation to plaintiff. On the issues thus presented the court made the following findings:

"That on or about January 5, 1920, the defendants sold to the plaintiff what is known as the Martin Kennedy $2,800 second mortgage, mentioned in plaintiff's seventh cause of action. That at the time of said sale the defendant, Robert J. Hurd, told the plaintiff that said mortgage was subject to $7,200 first mortgage and that it was a good second mortgage. That at said time the real estate described in said mortgage was worth from $12,000 to $12,800 and at this time worth from $9,000 to $9,600 and that Kennedy paid for said land so mortgaged $14,000 in December, 1919.

"That the said mortgagor defaulted in payment of his interest on said mortgage mentioned in finding number eighteen, a year or two later, at which time the defendant informed plaintiff, and the plaintiff and defendants discussed the conditions and agreed not to foreclose the mortgage, but allow it to run, trusting for improved conditions whereby Kennedy could make his payments. Kennedy did not pay any interest after that, but defendants remitted to the plaintiff out of their own funds, the interest regularly maturing, until about the year 1929, and paid out other sums aggregating over $6,000 to protect said loan."

On these findings judgment was rendered for defendants. The error complained of here is that these findings are indefinite. We

conclude that in view of the issues raised by the pleadings the findings are sufficiently definite to sustain the judgment.

Throughout the brief of plaintiff it is argued, and many cases are cited to sustain the view, that on account of the fiduciary relationship that existed between plaintiff and defendants the burden was upon defendants to prove that the transactions between plaintiff and defendants were free from fraud or bad faith. It is urged that because this view of the evidence was not taken by the trial court the judgment should be reversed. In the first place the trial court found positively, on what we consider substantial evidence, that defendants were not the agents of plaintiff in any of the transactions complained of. In the second place the court made findings of fact, on what we consider substantial evidence, that acquit defendants of any charge of bad faith or fraud.

To sustain the burden of proof does not mean that the person who has the burden must produce more witnesses or more documents or more circumstances than the other party. It only means that those which he does produce must be more persuasive to the judgment of the court than those produced by the opposite party. This burden was sustained by defendants in this case.

The judgment of the district court is affirmed.

SLOAN, J., not sitting.