JAMES G. WOODRUM v. THE WASHINGTON NATIONAL
BANK.

**No. 10884.**

1. TRUSTS AND TRUSTEES — *Election of Remedies.* Where one
holding as trustee securities owned by another exchanges them
for other securities without authority from the owner and with-
out the investment of any funds of his own, the owner has his
election either to take the substituted securities received by the
trustee or to recover the value of his own securities which were
given in exchange.

2. ———— *Chattel Mortgage—Disposition of Excess Proceeds.*
W. mortgaged certain cattle to a bank to secure his indebtedness
to it. The cattle having been destroyed by Texas fever, the bank
recovered judgment against the party who brought the disease
among them for the value of the cattle. It then collected on such
judgment sufficient money to discharge all of W.'s indebtedness
to it, and exchanged the unpaid balance of the judgment for a
larger judgment held by the wrong-doer against W. *Held:* (1)
That the judgment rendered in favor of the bank stood in lieu of
its mortgage security, and that W. was entitled to all moneys col-
lected in excess of his indebtedness to the bank; (2) that W.
might at his election take either the judgment against himself so
assigned to the bank, or charge the bank with the value of the
uncollected balance of the judgment first mentioned.

Error from Washington district court; F. W. STUR-
GES, judge. Opinion filed December 10, 1898. Re-
versed.

*J. G. Lowe, J. W. Rector,* and *Charles Smith,* for
plaintiff in error.

*Omar Powell,* and *Fred. Powell,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: This action was brought by J. G. Wood-
rum against the Washington National Bank to recover
a balance of money claimed to be due to the plaintiff
from the defendant, and also to obtain the cancela-

tion of a certain judgment rendered in favor of Clay, Robinson & Co. against the plaintiff and by them assigned to the defendant. The defendant answered, setting up, among other things, the judgment in favor of Clay, Robinson & Co., and the assignment thereof to the defendant as a set-off and counter-claim against the plaintiff, and asked for an affirmative judgment for divers sums of money claimed to be due the defendant from the plaintiff.

The substance of the plaintiff's claim was, and he offered testimony tending to show, that on the 19th of October, 1891, he owed the bank one note for $4551.45 and no more ; that at that time the bank held as security for this indebtedness a check given by Clay, Robinson & Co., dated July 11, 1887, for $3500, a cash deposit of $500, and the collateral notes executed by Mrs. Woodrum, secured by mortgage on her land, which was the basis of litigation in the case of Susie E. Woodrum against the Washington National Bank, just decided (*ante*, page 34) ; it also held a judgment against Clay, Robinson & Co. for $3878 recovered for the wrongful destruction, by Texas fever, of certain cattle belonging to the plaintiff in this action, on which the bank held a mortgage to secure his indebtedness to it. This judgment was rendered in an action brought by Woodrum against Clay, Robinson & Co., George E. Elwood and the bank to recover his damages occasioned by the introduction of Texas fever into a large herd he then owned, by Elwood and Clay, Robinson & Co. At that time Clay, Robinson & Co. held a note against Woodrum for $8000 with ten per cent. interest, dated March 4, 1887. The bank answered in that action setting up its chattel mortgage on certain of the cattle affected by the fever, and claiming damages to the extent of the value of

its security lost through the destruction of the cattle covered by its mortgage. The trial resulted in the allowance to Woodrum of the damages to his herd. but he was charged with the amount of the $8000 note and interest, and his damages, less $3878 awarded to the bank in lieu of its lost security, were deducted from the amount of the note. The final judgment in that action, which was rendered on the 17th of November, 1891, was in favor of Clay, Robinson & Co. against Woodrum for $5677.25, and in favor of the bank against Elwood and Clay, Robinson & Co. for $3878. There was litigation instituted by Clay, Robinson & Co. to restrain the collection of the $3500 check, but this terminated in favor of the bank, and on the 3d of March, 1893, the check, then amounting to $4696.53, was paid. The bank claimed the right, before applying this amount on the indebtedness of Woodrum to it, to deduct costs and expenses incurred in the litigation in relation to the check. These with interest, as figured in an itemized statement furnished by the bank, amounted to $1487.57, leaving a balance of something over $3000 to be applied on Woodrum's indebtedness.

Although it is contended on the part of the defendant in error that the evidence fails to show what agreement was entered into between the bank and Clay, Robinson & Co., we think the evidence offered by the plaintiff fairly tended to show, and in the absence of any counter proof was sufficient to establish that on the 27th of September, 1894, Clay, Robinson & Co. executed an assignment to the bank of the judgment in their favor against Woodrum, which amounted to $5677.25, and interest, and on October 9, 1894, the bank by its president and cashier entered a release and satisfaction of its judgment for $3878

against Clay, Robinson & Co. At the same time, and as a part of the same transaction, Clay, Robinson & Co. paid the bank $3000. No other consideration passed from the bank to Clay, Robinson & Co. for the assignment of their judgment against Woodrum than the balance of the $3878 judgment over and above the $3000 cash payment.

After the plaintiff had introduced his testimony the bank moved for judgment in its favor for the balance due under the judgment rendered in favor of Clay, Robinson & Co. against Woodrum, claiming that the evidence of the plaintiff showed the following state of accounts at the date of the judgment: That the plaintiff owed the defendant on the judgments assigned to the bank by Clay, Robinson & Co. with interest computed to date $8271.42, and was entitled to a credit for the amount claimed in the petition with interest computed to date $3536.61, and· for the further sum of $1941.22, being the difference between the amount of the $3878 judgment and interest to date and the $3000 cash payment· made by Clay, Robinson & Co. to the bank at the time of the assignment of the judgment. The court sustained this motion and entered judgment in favor of the bank for $2793.59. The theory of the case held by counsel for the bank is very simple. Woodrum owed the bank a note of $4551.45 and interest. He owed Clay, Robinson & Co. originally $8000. Allowing him all that was recovered as damages to his cattle and all that has been collected by the bank, including $500 cash deposited, there is still due on these two debts the amount for which judgment was entered; that it is no concern of Woodrum's whether the judgment entered in favor of Clay, Robinson & Co. is collected by them or by the bank, as the debt was not increased · by

the assignment of the judgment to the bank, and Woodrum was not injured by it. Woodrum's claim is less susceptible of ready apprehension. It is that the judgment rendered in favor of the bank against Clay, Robinson & Co. stood in lieu of the mortgaged cattle as security for the payment of his debt to the bank; that at the time the compromise was made which resulted in the payment by Clay, Robinson & Co. of $3000 and the assignment of their judgment against Woodrum to the bank the cash payment exceeded Woodrum's indebtedness to the bank, and that the bank did not then own the uncollected surplus of its judgment against Clay, Robinson & Co., but that Woodrum himself owned it, as he would own any surplus cattle remaining after the sale of sufficient of them to satisfy his debt to the bank; that this uncollected surplus was exchanged by the bank for the judgment which Clay, Robinson & Co. held against Woodrum; that the whole consideration paid for this assignment belonged to Woodrum and that he is entitled to his election whether he will take the specific property taken in exchange for that which in equity belonged to him, or will charge the bank with the uncollected balance of its judgment against Clay, Robinson & Co.; that in this case the court has permitted the bank to elect rather than Woodrum, and has allowed the bank to purchase a judgment against Woodrum and pay for it with a fund which belonged to Woodrum alone.

It is a general rule of law that where a trustee or custodian of the property of another makes an unauthorized exchange of it for other property the owner has his election to charge the trustee with the value of the property as for a conversion or to take the specific property received in exchange for it. In other words, if one enters into unauthorized specula-

tion with the funds of another which he holds in trust, the owner of the funds may affirm the bargain and take the benefit of it, or repudiate it and recover judgment against the trustee for his money. In this case, when the $3000 was paid by Clay, Robinson & Co. to the bank on its judgment it had received more than enough, according to the testimony before us, to discharge all of Woodrum's indebtedness to it, and the whole surplus remaining uncollected from Clay, Robinson & Co. on the bank's judgment in equity belonged to Woodrum. The whole consideration paid for the assignment of the judgment of Clay, Robinson & Co. against Woodrum belonged to Woodrum. Not a dollar belonging to the bank was invested in it. While the bank had a perfect right to buy up judgments against Woodrum with its own funds and to enforce them against him, when it bought this judgment solely with Woodrum's funds it took it in trust for him if he should so elect. He does so elect, and is entitled to enforce that election in this action.

But it is said that this allows Woodrum a discharge from a part of the debt he honestly owed without payment of it, and that this is unjust. It is answered, however, that the bank has in this case obtained a large judgment against Woodrum, for which it not only paid nothing itself but which it obtained by using a fund belonging in equity to Woodrum when Woodrum's debt to it had been more than paid and it was justly owing him a considerable balance; that as the case stands the bank has received a considerable sum in excess of all that was due to it from every source, and also has obtained a judgment in this case for $2793.59, which does not in fact represent a dollar of indebtedness that Woodrum or any one else owes to it. Certainly the bank has no superior equities to

urge. The plaintiff had a right to treat the purchase of Clay, Robinson & Co.'s judgment as made for his benefit, and to allow the bank credit for the identical property belonging to him which it exchanged for the assignments. It follows, therefore, that for the $3878 judgment held by the bank against Clay, Robinson & Co., under the facts as now disclosed by the record before us, the bank must account to Woodrum for the $3000 in cash it received and the $5675.25 judgment recovered by Clay, Robinson & Co. against Woodrum, assigned to the bank, will be treated as assigned to Woodrum, and therefore canceled and satisfied. This will leave the case for an accounting between the parties as to the other transactions.

What has been said in the foregoing opinion is based solely on the pleadings and the testimony offered on behalf of the plaintiff. What may be developed by evidence from the other side we do not know, and, of course, have no purpose of prejudicing the case of the defendant on another trial if the facts be made to appear differently from those now presented, but it has seemed necessary to say so much in order to express our view of the law for the guidance of the court on another trial. The view taken by the trial court on the case presented was erroneous. The judgment must be reversed and the cause remanded for a new trial.