No. 47,182

Ruby Kline and Ruth Shelor, Co-Conservators of the Estates of W. D. Orebaugh and Minne B. Orebaugh, *Appellees*, v. Roy Orebaugh, Elsie Orebaugh, Kent Valere Orebaugh and Joyce Orebaugh, *Appellants*.

(519 P. 2d 691)

208

*Harry A. Waite,* of Dodge City, argued the cause, and was on the brief for the appellants.

*B. G. Larson,* of Williams, Larson, Voss and Strobel, of Dodge City, argued the cause, and *James A. Williams, George Voss, Ken W. Strobel,* and *Max Eugene Estes,* of the same firm, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought on behalf of two aged parents against their son and the members of his immediate family for an accounting and other equitable relief. The action was the result of the misappropriation of the parents' property by the son through the misuse of their powers of attorney. The plaintiffs-appellees are Ruby Kline and Ruth Shelor, conservators of the estate of their parents, W. D. Orebaugh and Minnie B. Orebaugh. The defendants-appellants are Roy Orebaugh, his wife, Elsie Orebaugh and his son and daughter-in-law, Kent Valere Orebaugh and Joyce Orebaugh. Ruby Kline and Ruth Shelor are the daughters of W. D. and Minnie B. Orebaugh and the sisters of Roy Orebaugh. The facts in this case are not in dispute and are as follows: W. D. Orebaugh and his wife, Minnie B. Orebaugh, were in poor health and unable to look after their own affairs. In February of 1968 W. D. Orebaugh, then age 82, executed a power of attorney to his son, Roy. On March 28, 1969, Minnie B. Orebaugh, age 79, executed her power of attorney to Roy. In March of 1969 W. D. and Minnie B. Orebaugh owned real and personal property of a value estimated to be between 175,000 and 200,000 dollars. During the following three years Roy Orebaugh sold his parents' real estate and expended their funds in the total amount of $194,271.40; of these expenditures $28,164.59 was for the benefit of W. D. and Minnie B. Orebaugh. It is clear from the record that Roy Orebaugh misappropriated for his personal use or for the use of his wife, Elsie, or his son and daughter-in-law, the sum of $166,670.62.

In February of 1971 it came to the attention of Ruby Kline and Ruth Shelor that there was something wrong about the way Roy was handling their parents' property. After a family conference where the misappropriation became apparent, Ruby Kline and Ruth

Shelor petitioned the probate court of Ford county for their appointment as conservators of the estate of W. D. and Minnie B. Orebaugh. On February 25, 1971, Ruby Kline and Ruth Shelor were appointed conservators. The only liquid assets of W. D. and Minnie B. Orebaugh which the conservators were able to locate came to a total amount of $4,220.14. The conservators immediately filed this action against Roy, Elsie, Kent Valere and Joyce Orebaugh. On application of the conservators the district court appointed a receiver on May 14, 1971. Each of the defendants filed a notice of appeal from the order appointing the receiver but failed to perfect the appeal. The conservators found it extremely difficult to get information out of Roy Orebaugh. A pretrial conference was held on February 8, 1972. The case then proceeded to trial before the court. The trial court made extensive findings of fact all of which are supported by the evidence contained in the record. In a general way it may be said that Roy Orebaugh misappropriated great sums of his parents' money to pay debts and living expenses for himself and Elsie and for his son and his wife, Kent Valere and Joyce Orebaugh. The conservators were never able to obtain a full accounting for these moneys. The evidence established that Roy Orebaugh had purchased in his own name three parcels of real estate and in addition purchased two tracts of land the title to which was placed in the name of Kent Valere Orebaugh and Joyce Orebaugh. The evidence further disclosed that prior to the execution of the powers of attorney, Roy and Elsie Orebaugh were the owners of an 800-acre ranch which was heavily mortgaged. Using his parents' funds Roy made mortgage payments in the total amount of $18,585.84 to apply against the indebtedness on this tract.

In its conclusions of law the trial court found that these misappropriations of funds were made with fraudulent intent on the part of Roy Orebaugh. Furthermore the trial court found that Kent Valere and Joyce Orebaugh with full knowledge of the facts and of the ownership of the funds participated with Roy in the fraudulent misuse of funds and that they received for their personal use and enjoyment the sum of $52,800. The trial court found that Elsie Orebaugh did not knowingly participate in the misappropriation of funds by Roy and hence there were not sufficient grounds in the evidence upon which to base a personal judgment against her. As a part of its judgment in the case the court held that the conservators had an option either to take a personal judgment for each act of

misappropriation or in the alternative to elect to have the court impress a constructive trust on any tract of land purchased with misappropriated funds. In accordance with this order the conservators elected to have a constructive trust impressed against all of the real properties which had been purchased in the name of Roy Orebaugh or in the name of Kent Valere and Joyce Orebaugh. The court imposed a constructive trust on the 800-acre ranch. In each instance the defendants were given credit for the payments made on the purchase price of these various tracts of land. In addition to the constructive trusts the trial court entered judgment against Roy Orebaugh alone in the amount of $65,587.79 and against Roy, Kent Valere and Joyce Orebaugh, jointly and severally, in the amount of $19,300. No personal judgment was entered against Elsie Orebaugh.

Roy and Elsie Orebaugh and Kent Valere and Joyce Orebaugh have appealed to this court contending that the trial court committed error in a number of respects. Each of the defendants-appellants filed a statement of points relied upon which collectively total 39 separate points. The joint brief filed on behalf of the appellants does not separate the specific points argued. With some difficulty we have analyzed their brief and concluded that it contains four points which we will consider on this appeal. Any points which have not been briefed or argued will be deemed abandoned. (*Intercontinental Leasing, Inc., v. Lehr,* 209 Kan. 132, 495 P. 2d 900.)

At the outset it would be helpful to review some of the basic rights and obligations which came into existence when W. D. and Minnie B. Orebaugh executed their powers of attorney to their son, Roy. The relation of principal and agent is a fiduciary one, and if a wrong arises because of the conduct of the agent the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the *cestui que trust.* (*Wolcott & Lincoln, Inc., v. Butler,* 155 Kan. 105, 122 P. 2d 720.) In this case Roy Orebaugh having obtained a power of attorney from each of his parents was their agent. There existed a confidential relation between them. The execution of the powers of attorney was induced by that relation and Roy Orebaugh violated the confidence reposed in him by his parents. It is, of course, a universal rule of law, based upon ethics, morals and sound public policy, that one occupying a fiduciary relationship is not permitted to traffic in the trust estate to his personal profit or advantage. (*Murray v. Brown,*

177 Kan. 139, 276 P. 2d 344.) Where a trustee violates any duty which he owes to the beneficiary he is guilty of a breach of trust and he is liable to the beneficiary to redress that breach of trust.

In an equitable proceeding brought against a trustee for violation of his fiduciary obligations a court of equity may mold its judgment or decree to furnish relief suitable to the circumstances of the case before it. (54 Am. Jur., Trusts, § 628.) A court of equity is not obliged to render the specific relief prayed for but may make such a decree as justice demands, under all the facts and circumstances as disclosed by the evidence. (*George v. W-G Fertilizer, Inc.,* 205 Kan. 360, 469 P. 2d 459.)

One of the remedies afforded in equity for a breach of trust is known as the "trust pursuit rule." This rule is stated in Restatement, Second, Trusts § 202 as follows:

"§ 202. Following Trust Property into Its Product

"(1) Where the trustee by the wrongful disposition of trust property acquires other property, the beneficiary is entitled at his option either to enforce a constructive trust of the property so acquired or to enforce an equitable lien upon it to secure his claim against the trustee for damages for breach of trust, as long as the product of the trust property is held by the trustee and can be traced.

"(2) Except as stated in Subsection (1), the claim of the beneficiary against the trustee for breach of trust is that of a general creditor."

On a number of occasions the trust pursuit rule has been recognized in Kansas. (*Clingman v. Hill,* 104 Kan. 145, 178 Pac. 243; *Merket v. Smith,* 33 Kan. 66, 5 Pac. 294; and *Woodrum v. Bank,* 60 Kan. 44, 55 Pac. 333.)

The trust pursuit rule is also applied where the property purchased from misappropriated trust funds ends up in the hands of a third person. In that situation the remedy afforded the beneficiary of the trust depends upon whether or not the third person was a bona fide purchaser for value and without notice of the breach of trust. The rule is stated in the Restatement, Second, Trusts § 284, p. 47, as follows:

"(1) If the trustee in breach of trust transfers trust property to, or creates a legal interest in the subject matter of the trust in, a person who takes for value and without notice of the breach of trust, and who is not knowingly taking part in an illegal transaction, the latter holds the interest so transferred or created free of the trust, and is under no liability to the beneficiary."

If the trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee does not hold the property free of the trust, although he paid

value for the transfer. (Restatement, Second, Trusts § 288.) Likewise if the trustee in breach of trust transfers trust property and no value is given for the transfer, the transferee does not hold the property free of the trust, although he had no notice of the trust. (Restatement, Second, Trusts § 289.) These rules pertaining to third parties were recognized in *Clingman v. Hill,* 113 Kan. 632, 215 Pac. 1013, where we held that property purchased by a trustee with trust funds wrongfully converted to his own use may be followed into the hands of one who acquired it without notice of the wrong, but who gave nothing for it beyond the discharge of a preexisting debt. Under those circumstances the third party was not a purchaser for value. In *Bank v. Byrnes,* 61 Kan. 459, 59 Pac. 1056, we pointed out that as a general principle, all persons who knowingly participate or aid in committing a breach of trust are responsible for the wrong and may be compelled to make good the loss. The rule has more recently been applied in *Alliance Mutual Casualty Co. v. Scheufler,* 203 Kan. 171, 453 P. 2d 15, where we held that one who assists in the creation of a debt, through the defalcations of another acting in a fiduciary capacity, may be held personally liable.

In some cases the trustee has wrongfully used trust funds in discharging an encumbrance upon the property of a third person. In that situation a court of equity will afford relief to the beneficiary by putting him in the position occupied by the obligee before the obligation was discharged. If the obligation was a secured obligation such as a mortgage, the beneficiary is entitled to be subrogated to the security interest held by the obligee. (Restatement, Second, Trusts § 202 [g]; *Levant State Bank v. Shults,* 142 Kan. 318, 47 P. 2d 80.) It is important to note that in this situation the beneficiary is not entitled to charge the third person as constructive trustee of the property and to compel him to convey the property to the trust, but he is entitled to a lien on the property for the amount so expended and to be subrogated to the claim of the mortgagee. In disposing of this very complex and difficult case the trial court recognized these rules. It imposed constructive trusts against certain real property and entered personal judgments to compensate the beneficiaries for trust funds misappropriated which could not be traced into specific property.

On this appeal the defendants complain that the trial court erred in permitting plaintiffs to elect to have the court impose a

constructive trust on certain lands purchased with trust funds and in addition thereto to obtain a personal judgment against Roy Orebaugh as to the funds which were misappropriated but which could not be traced into any specific property. The defendants argue that the plaintiffs have had two satisfactions of one claim and thus a double recovery. The thrust of defendants' argument is that all of the misappropriations of trust funds by Roy Orebaugh must be considered as a single breach of trust and therefore the plaintiffs must elect either to secure a personal judgment against Roy Orebaugh for the full amount of the property misappropriated or take all the land on the theory of a constructive trust. We do not agree with the defendants. We find that each individual misappropriation of funds by Roy Orebaugh constituted a separate wrongful act and breach of trust. This being true the plaintiffs had the right to exercise their option with respect to each individual transaction and elect whether to proceed by way of a personal judgment against Roy Orebaugh or to follow the trust funds into the property which had been purchased. The trial court quite properly permitted the plaintiffs to elect as to their remedy with respect to each separate transaction after the circumstances were fully disclosed.

Kent Valere and Joyce Orebaugh contend that there is nothing in the record that indicates that either of them cooperated with Roy Orebaugh in misappropriating trust funds and therefore plaintiffs are not entitled to any relief against them. Kent Valere and Joyce Orebaugh vigorously object to the imposition of a constructive trust against the lands which were purchased with trust funds and placed in their names. The court referred to these lands as the Seaman land and the Roberts land. The evidence was absolutely undisputed that all payments on the purchase price of these lands were made with trust funds. Hence under the principles of law discussed above the trial court properly impressed a constructive trust against these properties since Kent Valere or Joyce Orebaugh were not purchasers for value. Furthermore the trial court found that they accepted title to these lands with full knowledge of the fact that trust funds had been used to pay the purchase price. Kent Valere and Joyce Orebaugh further complain that a personal judgment was rendered against them for trust funds expended for their benefit over and above the funds which were actually invested in real estate. It is undisputed in the record that

Kent Valere and Joyce Orebaugh received from the trust estate, funds in the amount of $52,800. They signed notes in favor of their grandparents in that total amount. They were given full credit for the funds used to purchase the Seaman and the Roberts land in the amount of $33,500. This left a balance owing of $19,300 for which a personal judgment was entered. We find that the district court properly entered a personal judgment against them in that amount. The finding of the trial court that Kent Valere and Joyce Orebaugh had full knowledge of the source of these funds is supported by the record. Since Kent Valere and Joyce Orebaugh knowingly participated or aided Roy Orebaugh in his breach of trust they are responsible to the extent of their participation for the wrong and may be compelled to make good the loss.

Elsie Orebaugh complains that a constructive trust was imposed against the 800-acre ranch which she and Roy had owned prior to the execution of the powers of attorney. It is undisputed that Roy expended trust funds in the amount of $18,585.84 to make mortgage payments due the Prudential Life Insurance Company on its first mortgage and due Fred Doll on his second mortgage. Under these circumstances the conservators of the trust are entitled to a lien on this property for the amount so expended with interest and are entitled to be subrogated to the secured claims of the mortgagees in that amount. This was the relief which was specifically requested by the plaintiffs. This 800-acre ranch was sold in a mortgage foreclosure proceeding and a constructive trust was imposed against the equity of redemption. Technically the trial court was authorized under the evidence to impress on the 800-acre ranch an equitable lien in the amount of $18,585.84, rather than to impress a constructive trust covering the *entire interest* of Roy and Elsie Orebaugh in the equity of redemption of this property. We find nothing in the record, however, to show that Elsie Orebaugh had any equity in the property over and above the mortgage indebtedness and the equitable lien of the conservators of the trust. Under these circumstances we cannot say that Elsie Orebaugh suffered any prejudice by reason of the court's framing its judgment in the manner in which it did.

Another point raised is that the probate proceedings in which Ruby Kline and Ruth Shelor were appointed conservators of their parents' estate were void because of failure to comply with certain statutory procedural requirements. We note from the record that

the defendants filed their petition in the district court to vacate the conservatorship. This, of course, constituted a collateral attack upon the validity of the conservatorship. It is clear from the record that notice of the conservatorship hearing was given to W. D. and Minnie B. Orebaugh and also to Roy Orebaugh in the probate court. The probate court had jurisdiction of the parties and the subject matter. Any procedural defects would not render the conservatorship proceedings void. K. S. A. 59-2201 declares that no defects in form in a pleading in a probate proceeding shall impair substantial rights; and no defect in the statement of jurisdictional facts actually existing shall invalidate any proceedings. Likewise K. S. A. 59-2211 provides that no defect in any notice nor in the service thereof, not affecting the substantial rights of the parties, shall invalidate any proceedings after such notice and the proof of service thereof shall have been approved by the court. Under the circumstances in this case we have no hesitancy in holding that the proceedings in which the plaintiffs were appointed conservators were not void or subject to a collateral attack. (*Howbert v. Heyle,* 47 Kan. 58, 27 Pac. 116.) In *Woodring v. Hall,* 200 Kan. 597, 438 P. 2d 135, we stated that collateral attacks upon judicial proceedings are never favored, and where such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void, but will be held to be valid. Here Roy Orebaugh was a party to the conservatorship proceeding and received notice prior to the appointment of the plaintiffs as conservators. Since he did not take a direct appeal from the order appointing his sisters as conservators we do not see any basis for his complaint at this late date in a collateral proceeding.

Finally the appellants take the position that it was error for the trial court to appoint a receiver to take charge of the properties in which they claimed an interest. The defendants cite no cases in their brief nor do they state specifically why this was error. A receiver was appointed in the district court under the authority of K. S. A. 1971 Supp. 60-1301, which authorizes appointment of a receiver in situations where the court finds that such an appointment is necessary in order to keep, preserve and manage property pending the determination of any proceeding in which such property may be affected by the final judgment. There is nothing in

the record to disclose that the trial court abused its discretion in appointing a receiver in this case. It was obvious from the beginning of the lawsuit that prompt action was necessary to protect the rights of W. D. and Minnie B. Orebaugh. We cannot fault the trial court for acting expeditiously.

For the reasons set forth above the judgment of the district court is affirmed.