No. 35,429

Wolcott & Lincoln, Inc., *Appellant*, v. Carl B. Butler, *Appellee*.

(122 P. 2d 720)

Opinion filed March 7, 1942.

*George R. Gould,* of Dodge City, argued the cause, and *M. W. Borders, Wilfred Wimmell* and *Robert B. McCreight,* all of Kansas City, Mo., were on the briefs for the appellant.

*Floyd N. Cossman,* of Ashland, argued the cause, and *Francis C. Price,* of Ashland, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from an order of the district court overruling a demurrer and the motion to strike a part of the counterclaim. The pleadings may be summarized as follows: Plaintiff in its petition, filed February 6, 1936, alleged it is a corporation organized and existing under the laws of Missouri, with its principal place of business at Kansas City; that it is duly qualified and licensed to do business in Kansas; that at various times during 1928 and January, 1929, defendant employed plaintiff to purchase and sell wheat and corn for him on the Kansas City and Chicago markets, the defendant agreeing to pay plaintiff a commission on purchases and sales and to pay plaintiff any advances plaintiff made on account of such purchases; that pursuant to the employment plaintiff made certain purchases and sales and advanced certain sums of money, with the result that on January 18, 1929, there was due and owing to plaintiff on account of such services rendered and moneys advanced the sum of $1,393.24, which sum plaintiff duly demanded of defendant, who has failed and refused to pay; that shortly after January 18, 1929, defendant, who was then a resident of Kansas, absented himself from the state and plaintiff was unable to get service upon him. The prayer was for judgment for the amount claimed to be due with interest.

After some procedure which has no bearing on the present status of the case and for that reason need not be noted, and on August 23, 1939, defendant filed his amended answer and counterclaim in which defendant denied the material allegations of the petition, except as specifically admitted or qualified, and specifically denied he was indebted to plaintiff in any amount, and alleged if any such indebtedness ever existed it had long since been fully paid and satisfied; and in what is denominated a counterclaim defendant admitted the corporate existence of plaintiff, as alleged, and that defendant had been absent from the state of Kansas as alleged, and further alleged that about July 31, 1928, plaintiff and defendant entered into an oral agreement whereby defendant employed plaintiff as his agent, broker and employee to purchase and sell wheat and corn on the Kansas City and Chicago markets, the defendant agreeing to pay plaintiff a commission on all purchases and sales; as a part of the

agreement it was agreed that defendant would advance to and deposit with plaintiff as his agent, broker and employee, money and credits from time to time with which to pay for such purchases and sales, and that all profits accruing from such purchases and sales should be retained by plaintiff as the agent, broker and employee of defendant for the purpose of buying and selling other commodities on said markets; that thereafter and at various dates up to and including February 23, 1929, in pursuance of said agreement, defendant deposited with plaintiff certain sums of money, goods and credits, including profits from purchases and sales of wheat and corn, for the purpose of buying and selling wheat and corn on the Kansas City and Chicago markets for and on behalf of defendant as his agent, broker and employee, and as such agent, broker and employee plaintiff did during the time mentioned make various and sundry purchases and sales on said markets as such agent, broker and employee with the property, funds and credits belonging to defendant; that defendant does not know and is unable to state the exact number of such purchases, sales and transactions, or the deposits of money, goods and credits on account thereof, made prior to January 14, 1929, but alleges that on that date, as a result of deposits of money, goods and credits and profits from the purchase and sale of wheat and corn and other Board of Trade transactions, defendant had an unencumbered credit balance on deposit with plaintiff, as his agent, broker and employee, in the amount of $5,174.11; that thereafter and until February 23, 1929, certain further and additional purchases, sales, and Board of Trade transactions and deposits of moneys, properties and credits were made by and with plaintiff as the agent, broker and employee of defendant, and in pursuance of said employment, in the aggregate amount of $18,786.55; that defendant does not know and is unable to set forth the exact nature and character or extent of the subsequent Board of Trade transactions, except the net profits and losses resulting therefrom. Certain transactions are then set out, in which it is alleged that during the period from January 14 to February 25, 1929, defendant sustained losses on account of such purchases and sales in the aggregate of $14,548.15, leaving a net balance of moneys and credits in the possession and under the control of plaintiff, as the agent, broker and employee of defendant, in the amount of $4,238.06, which plaintiff thereafter held, and continues to hold, as the agent, broker, trustee and bailee of defendant; that plaintiff has failed, neglected and refused to render an account-

ing and offer to settle the amount, or to notify defendant that he no longer held such funds and for the benefit of defendant; that on or about September 26, 1938, defendant made due demand upon plaintiff for an accounting and settlement of the account, which demand was and still is refused; that an itemized statement of the deposits of money and credits and profits and losses from such purchases and sales of such Board of Trade transactions, beginning with the credit balance of $5,174.11 on January 14, 1929, is attached as an exhibit; that plaintiff has during all the times mentioned, and is now, the agent, broker and employee, and trustee and bailee, of defendant, and that by reason of the premises there is due defendant the sum of $4,238.06, together with interest since September 26, 1938, for which sum defendant prayed judgment.

Plaintiff demurred to the amended counterclaim on the ground that it appears from the face thereof that the counterclaim does not state facts sufficient to constitute a cause of action against the plaintiff, and for the further reason that it appears from the face of the counterclaim that the cause of action sought to be asserted therein is barred by the statute of limitations, and also filed a motion to strike the allegations of the counterclaim to the effect that there is due and owing defendant from plaintiff the sum of $4,238.06 with interest since September 26, 1938, for the reason that it appears from the face of the counterclaim that the same is barred by the statute of limitations (G. S. 1935, 60-306), and further, that if defendant has any right to assert the cause of action alleged in his counterclaim he can assert such claim only to the extent allowed and permitted by G. S. 1935, 60-715, and if the matters alleged in the counterclaim are within the provisions of this statute defendant may assert the same only as an offset to the recovery plaintiff is entitled to under the allegations of his petition. Plaintiff's demurrer and its motion were overruled.

Counsel for appellant in their brief say: "Only one primary question is involved: (1) whether the defendant's amended counterclaim states a cause of action upon an account." They argue all it states is a cause of action upon an account which shows upon its face that it is barred by the three-year statute of limitations. (G. S. 1935, 60-306, *second.*)

This contention is argued at length in a brief and a reply brief. We have carefully considered the arguments and have examined the authorities cited and feel compelled to hold the point is not well

taken. The word "account" is a generic term, difficult to define, having various meanings, depending somewhat upon the surrounding circumstances and the connection in which it is used. (1 C. J. S. 571.) An action on an account normally includes open account and book account, or book debt. (See 1 C. J. S. 579 *et seq.*) This does not mean that every type of action where one or both of the parties thereto kept some books or records is an action upon account.

Plaintiff's demurrer to the counterclaim of necessity admits, for the purpose of the demurrer, all pertinent facts well pleaded in the counterclaim. Summarized these are: That in July, 1928, plaintiff and defendant entered into an agreement whereby defendant employed plaintiff as his agent, broker and employee to purchase and sell grain on the Kansas City and Chicago markets, and defendant agreed to advance and deposit with plaintiff, as his agent, broker and employee, moneys and credits from time to time with which to pay for such transactions, and that all profits accruing from such business should be retained by plaintiff as the agent, broker and employee of defendant for the purpose of conducting the business. The agreement was not limited to a single business transaction nor to a specified period of time. It was alleged that by February 25, 1929, plaintiff had in its hands money owing to the defendant of more than $4,000; that plaintiff never offered to pay that money to defendant, or to notify defendant that he no longer held the funds for his benefit, and that in September, 1938, defendant made demand upon plaintiff for an accounting and settlement, which demand was refused.

Since a demurrer searches the record, it may be noted that plaintiff in its petition alleged it was the agent of defendant in transacting the business referred to. It is well settled the relation of principal and agent is a fiduciary one. (*Chase v. Chapman*, 89 Kan. 196, 131 Pac. 615; *Shaffer v. Lindsay*, 114 Kan. 22, 216 Pac. 813; 2 C. J. S. 1023; Restatement, Agency, §13.) In 25 C. J. 1119 it was said respecting a fiduciary relation:

"It is a relation in which, if a wrong arises, the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the *cestui que trust.*"

In 37 C. J. 826, 827, it is said:

"The question when the statute of limitations begins to run against a right of action of a principal or client against his agent or attorney is one on which the decisions are somewhat inharmonious. . . . Much depends on the

particular facts in the different cases that have arisen, and this goes to explain some of the apparent conflict. . . . Where a principal furnishes money to his agent for the purpose of having it applied to some specific purpose, such as the payment of a debt or the purchase of property on the principal's behalf, but the agent fails so to apply the money or misappropriates it, in some jurisdictions it is held that the principal's right of action accrues and the statute begins to run only when demand is made upon the agent or the principal has notice of the agent's breach of duty"; (citing *Guernsey v. Davis,* 67 Kan. 378, 73 Pac. 101, and other cases) "while in others it is held that the cause of action accrues and the statute begins to run when a reasonable time has elapsed for the agent to perform his duty, no demand being required." (Citing cases from other jurisdictions.)

The principle cited in *Guernsey v. Davis,* supra, has been followed in a number of Kansas decisions. See *Washbon v. Bank,* 87 Kan. 698, 125 Pac. 17; *Peyton v. Chase County Nat'l Bank,* 124 Kan. 763, 262 Pac. 595; *Rafter v. Hurd,* 136 Kan. 127, 12 P. 2d 837.

The same principle is applied to the relation of trustee and his *cestui que trust.* See *Green v. Williams,* 21 Kan. 64; *Perry v. Smith,* 31 Kan. 423, 2 Pac. 784; *Hunter v. Coffman,* 74 Kan. 308, 86 Pac. 451; *Brooks v. Campbell,* 97 Kan. 208, 155 Pac. 41; *Hirt v. Bucklin State Bank,* 153 Kan. 194, 109 P. 2d 171.

Contending the counterclaim was barred by the statute of limitations, plaintiff filed a motion to strike certain portions of it upon the ground that under G. S. 1935, 60-715, plaintiff could use the counterclaim only as an offset to the sum sought by plaintiff in his petition. Since we have held the cause of action set forth in the counterclaim was not barred by the statute of limitations the section of the statute referred to has no application.

The judgment of the trial court is affirmed.

Hoch, J., not participating.