No. 47,269

KATHERINE A. KIRK, nee KATHERINE A. BACHMAN, *Appellee*, v.
BEACHNER CONSTRUCTION COMPANY, INC., *Appellant*.

(522 P. 2d 176)

Opinion filed
May 11, 1974.

R. L. *White*, of Pittsburg, argued the cause, and J. *Curtis Nettels*, also of Pittsburg, was with him on the brief for the appellant.

E. L. *Kinch*, of Ratner, Mattox, Ratner, Ratner & Barnes, of Wichita, argued the cause, and *Murvyl M. Sullinger*, of Pittsburg, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This action arises out of a peculiar accident occurring August 26, 1971, on a bridge in Labette County. In her petition the plaintiff, Katherine A. Kirk, nee Bachman, seeks to recover damages in the amount of $50,000 for personal injuries. The jury, in its wisdom, returned a verdict for $45,000. The defendant, Beachner Construction Company, Inc., sometimes referred to as Beachner, has appealed.

Quoting from its brief, Beachner "simply desires a new trial on the issue of damages alone, or in the alternative requests the court

to reduce the judgment to a reasonable sum." Thus, we are not required to deal with the question of liability and as to that will say, only, that there was substantial evidence of negligence on the part of the defendant.

The sole issue before us for decision is framed by the defendant in these words:

"Appellant should have a new trial on the issue of damages alone, or should have the judgment reduced to a reasonable sum, because the verdict was given under the influence of passion and prejudice in that the verdict was grossly excessive and was contrary to the evidence."

Now for some facts. The accident happened as plaintiff's car and Beachner's truck passed each other on a narrow bridge. The truck was pulling a lowboy trailer loaded with a heavy crane. The right side of the crane bumped into the side of the bridge as it came opposite the plaintiff and then toppled over on her car. The crane hit the car directly in front of the windshield. Pictures taken of the damaged car would cause any viewer to marvel that the driver could have come out alive.

At the time of the wreck the plaintiff was unmarried and attending Pittsburg State College, starting her last semester. She was returning to Pittsburg from her first day of practice teaching at Parsons when the crane crashed into her life. Due to the injuries she received, which will be described in some detail later, Mrs. Kirk was forced to lay out of school for the fall semester, and finally graduated in the spring of 1972. She married Mr. Kirk the following August, and at the time of trial, November 14, 1972, was living with her husband in El Paso where she was teaching part time in the public schools.

Expenses attributable to the accident, including medical and hospital costs, damage to clothing, etc., amounted to $2,077.88. In addition, Mrs. Kirk lost a semester of teaching which resulted in a loss of earnings estimated to be $3100 at the current salaries then being paid teachers.

Going back to the wreck: As Beachner's crane crashed into her car, the plaintiff was showered with glass. When help arrived, blood was coming from her face and arms and she was crying hysterically. She was taken to a hospital where a Pittsburg physician, Dr. Pogson, made an examination. He described her as being in pain; as having sustained cuts, lacerations and bruises; and having stiffness of the neck, of the lumbar back, and of the

hips. She was discharged from the hospital, on crutches, two weeks later. Dr. Pogson testified that the plaintiff had a congenital condition of the lower back, known as transitional vertebra, which would prolong her recovery from the lumbosacral sprain received in the accident. When he last saw her in December, 1971, in connection with her injuries, she still had complaints and hadn't made much improvement in the last three or four visits. Dr. Pogson said she would tend to have recurrent back problems but not as a result of the accident.

Mrs. Kirk consulted two orthopedic specialists as the days of her travail lengthened. On four occasions, October 25, 1971, November 5, 1971, December 28, 1971, and July 5, 1972, she visited Dr. Cline D. Hensley, of Wichita, whose diagnosis was transitional lumbosacral vertebra, acute low back sprain, and some anxiety reaction. He advised her to obtain a corset or back support, to discard the crutch for a cane, and to take prescribed back exercises. He testified her back pain relates to preexisting low back weakness, making it more prone to strain and that the accident was the precipitating factor causing it to begin at this time. He stated plaintiff was not aware of her congenital defect, but it was not uncommon to find patients who do not experience symptoms until they become involved in a traumatic accident. He anticipated plaintiff would be subject to intermittent low backache, much as she had been, and he doubted that she should bowl or water ski or do anything of that nature.

Dr. Alexander Lichtor of Kansas City, Missouri, examined Mrs. Kirk on December 29, 1971. He felt that she had injury to tissues around her back which had not healed and were painful; that when healing occurred scar tissue would be left; that this would reduce elasticity and that painful symptoms could be brought on again. In his opinion "the accident described was a medically competent producing cause for the condition which I found this woman to be suffering." He felt her condition was chronic and she would have recurrent pain, both in the back and in the wrist. As to the latter, Dr. Lichtor found irritation to and tenderness in the median nerve in the left wrist—carpal tunnel syndrome, he termed it—and that excessive use of the wrist should be avoided. This injury the doctor also related to the accident and he said some people require surgical repairs.

A third specialist, Dr. D. L. Yancey, from Springfield, Missouri,

testified on behalf of the defendant. His findings and conclusions differed somewhat from those of his brother specialists on the other side of the case, a phenomenon which we have observed is not uncommon in personal injury cases. However, even Dr. Yancey would concede that scar tissue is not as elastic as tissue which is normal, and that persons with residual back weakness are more easily predisposed than others to future injury and recurrent strains.

Our rule relating to excessive verdicts is not obscure. It has frequently been discussed and is succinctly stated in *Langley v. Byron Stout Pontiac, Inc.*, 208 Kan. 199, 202, 491 P. 2d 891:

"When a charge of excessive verdict is based on passion or prejudice of the jury and depends for support solely on the amount of the verdict, the trial court will not be reversed for refusing a new trial unless the amount of the verdict in the light of the evidence shocks the conscience of the appellate court. (*Knoche v. Meyer Sanitary Milk Co.*, 177 Kan. 423, 280 P. 2d 605; *Neely v. St. Francis Hospital & School of Nursing*, 188 Kan. 546, 363 P. 2d 438; *Slocum v. Kansas Power & Light Co.*, 190 Kan. 747, 378 P. 2d 51.)"

See, also, *Riggs v. Missouri-Kansas-Texas Rld. Co.*, 211 Kan. 795, 802, 508 P. 2d 850; *Barnes v. St. Francis Hospital & School of Nursing*, 211 Kan. 315, 321, 507 P. 2d 288; *Ketner v. Atchison T & S. F. Rly. Co.*, 212 Kan. 453, 454, 510 P. 2d 1220; *Pike v. Roe*, 213 Kan. 389, 390, 516 P. 2d 972.

But the rule, like many others in the field of law, is more difficult to apply than to state. It is not open to doubt that a verdict so excessive and disproportionate to the damages sustained as to be unconscionable would be abhorrent to the law. The difficulty, of course, when it comes to applying the rule, is simply this: What is unconscionable is not subject to precise and unequivocal definition. What is shocking to the conscience depends upon the amount of the verdict as related to the facts and circumstances of a given case. In *Riggs v. Missouri-Kansas-Texas Rld. Co.*, supra, we said:

". . . We have held on many occasions that there is no fixed or absolute standard for measuring the excessiveness or inadequacy of a verdict in a personal injury action. . . ." (p. 802.)

An examination of the numerous cases challenging the sufficiency, or insufficiency, of a verdict reveals no simple, symmetrical pattern or design. Each case seems to stand on its own facts. We deem it fruitless to attempt a reconciliation of the various amounts which have or have not been held excessive, and we shall undertake no such effort. Perhaps no better explanation can be given for the lack

of dollars and cents uniformity in our decisions than is expressed in *Domann v. Pence*, 183 Kan. 135, 325 P. 2d 321:

". . . Pain and suffering have no known dimensions, mathematical or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence. . . ." (p. 141.)

We have attempted to appraise the reasonableness of this verdict in the light of what Mrs. Kirk has already experienced in disability, in expense, and in pain, suffering and anguish, and what her doctors say she may reasonably expect to experience in the future in those same areas. In this approach we recognize as we said in *Domann*, that "No verdict is right which more than compensates—and none is right which fails to compensate."

The times in which we live are highly inflationary, with constantly climbing prices and a continually shrinking dollar. It is against this sort of a background that we must consider the dictates of conscience.

Beachner suggests in his brief that the verdict "is at least double, and probably triple the amount" which would substantially compensate Mrs. Kirk for her injuries. We cannot join in this view. Mrs. Kirk was still unable to teach on a full-time basis at the time of trial and, according to competent medical tetstimony, faced a future of recurrent pain, of avoiding back strain, and of giving up sports, an area in which she had been active. She had, it is true, a congenital back condition, which had been latent and unknown, but was triggered into painful symptoms by the accident. We have held that aggravation of a pre-existing condition is compensable in an action to recover personal damages from a tort-feasor. (*Knoblock v. Morris*, 169 Kan. 540, 220 P. 2d 171; *Rowe v. Maule Drug Co.*, 196 Kan. 489, 413 P. 2d 104.) The same rationale is found in compensation cases, and in *Williams v. Benefit Trust Life Ins. Co.*, 200 Kan. 51, 434 P. 2d 765, it was also applied in an action based on an accident policy.

An appellate court should be cautious in substituting its judgment for that of the jury which heard the case. Mindful of this

admonition, we cannot say that the verdict, although it may be on the generous side, is so excessive as to shock the conscience or indicate passion and prejudice on the part of the jury.

The judgment is affirmed.