(563 P.2d 1079)
No. 48,287

Patti L. Hubin, *Appellee*, v. Dr. E. W. Shira, Jr., *Appellant.*

Opinion filed April 15, 1977.

*Harry A. Waite*, of Dodge City, for appellant.

*Jack Dalton*, of Mangan, Dalton, Trenkle & Gunderson, of Dodge City, for appellee.

Before REES, P.J., FOTH and SWINEHART, JJ.

SWINEHART, J.: This is an appeal from a judgment upon a jury verdict in favor of the plaintiff, based upon assault and battery, and malicious, deceitful, fraudulent and oppressive actions by the defendant toward the plaintiff. A judgment included actual and punitive damages, for the total sum of $55,000.

The defendant doctor appeals on four grounds: (1) that the trial court erred in overruling defendant's objections to the admission of the testimony of four female witnesses, and the testimony of Dr. Conard, Dr. Stockwell, Dr. Holman and Dr. Baum; (2) that the trial court erred in that it abused its discretion under K.S.A. 60-445 and K.S.A. 60-455 in admitting into evidence the testimony of said witnesses as to previous civil wrongs; (3) that certain instructions given by the court prejudiced the jury against the defendant and deprived him of a fair trial; and (4) that the verdict of the jury awarding damages was so excessive as to indicate passion and prejudice on the part of the jury.

A synopsis of the evidence is necessary for an adequate understanding of the legal questions raised. Plaintiff, Patti Hubin, was a dental assistant by training, and was approximately 19 years of age at the time this action was filed. She filed this suit against Dr. Earl W. Shira, a practicing dentist, for alleged assault and battery and fraud. Hereafter, Patti Hubin will be referred to as the appellee, and Dr. Shira as the appellant.

Appellee was, at the time of the incident complained of, a recent graduate of the Kansas Institute for Medical and Dental Assistants in Wichita, Kansas. Late in February of 1973, the appellee was placed in a one month internship with Dr. Allen Reynolds, a dentist, as completion of her formal training. Dr. Reynolds and the appellant in this action were associated in the practice of dentistry in Dodge City, Kansas. This internship was scheduled for the entire month of March of 1973. During the last week of the internship, the appellee and Dr. Reynolds had talked about her remaining as a dental assistant, and they reached an agreement by which she would work for him following her internship.

The last day of the internship was a Saturday, March 31, 1973. Dr. Shira did not normally practice on Saturday, but came to the office about noon to pick up his mail. Appellee worked that

Saturday morning until about noon, at which time she left the office by way of the back door, which led to the parking area where her car was parked. She had difficulty starting her car at that time, and returned to the office where she called her sister and made arrangements for her sister to pick her up. At about this time, the appellant was completing the task of collecting his mail, and was journeying towards the parking lot where the appellee's car was stalled. Appellant noticed that appellee was having difficulty starting her car, and offered his assistance. Appellant was eventually successful in starting the vehicle.

Testimony as to what happened next was in serious dispute. First, we will outline appellee's version, as indicated by her evidence at the trial. While appellant was working with appellee's car, they got to talking. Dr. Shira asked if Miss Hubin was interested in some outside employment. Miss Hubin expressed interest, and a 1:30 meeting was scheduled for that afternoon at the dental office.

The parties met that afternoon as agreed. Appellant informed appellee that he was doing some tests for research relating to the cause of decaying teeth, and inquired if she would be willing to engage in such testing, that if she was interested, she would be paid $20.00 per test for a total of twelve tests. Appellee agreed to participate.

Upon agreeing that the present was as good a time as any to commence the first test, the parties proceeded into the doctor's operatory where the appellee was asked to chew some red wax, and her temperature was taken. Appellee was then directed to go into appellant's private office and remove her clothing so that further examination and tests could be conducted. Shortly thereafter, appellant walked into the private office carrying a small black bag, which contained, among other things, glass slides, a thermometer, pencil and paper. At this time he took a tape measure and measured the appellee's neck, shoulders, bust, hips and legs, and recorded this information on a piece of paper. The appellee was then directed by the appellant to lie down on the floor on a blanket.

Appellant then began to perform what appellee believed to be a Pap test, but she shortly discovered that he was not doing what he was supposed to be doing, as she could feel he was using his hands in a fashion she thought to be improper. Although appellee

was aware that she and the appellant were the only ones in the dental offices, she did not make any overt movements or actions to stop the proceedings at this point, though she was becoming apprehensive.

Appellant soon asked her if there was something wrong, that she was "not getting stimulated," to which appellee responded that she did not have to get stimulated to participate in such a test. Appellant insisted that she did, that it was really important. Miss Hubin tried to get up, but was told by Dr. Shira to lie back down. Dr. Shira informed the appellee that it often helps a woman to become stimulated if you kiss her breasts. He then leaned down on top of her, and she raised up and said, "I don't want it," and he put his hands on her shoulders and said, "We're not finished yet." He also informed appellee that he had had a vasectomy. Again, Miss Hubin told appellant to forget it, that she did not want it, that she didn't need his money, and that she was not going to take these tests. Finally, Dr. Shira gave in, and allowed Miss Hubin to get up. He watched appellee get dressed, and then permitted her to leave.

Appellee testified that she was shocked at the activities and actions of appellant, and that she had no idea what he was going to do. Appellee's testimony further indicated that she became extremely upset and distraught over this action, so much so that she was temporarily unable to relate to her sister what had happened because of her embarrassment and humiliation. The evidence further indicates that the entire incident caused Miss Hubin to seriously distrust dentists, and, consequently, she was unable to find employment as a dental assistant for several months. In short, the evidence indicated that Miss Hubin suffered both physically and emotionally.

The appellee called as witnesses in her behalf those witnesses whose testimony is objected to by the appellant. The female witnesses all testified to similar experiences with the appellant doctor, either as employees or patients of said doctor. For example, one of the female witnesses testified that she had been hired by appellant right out of high school. Dr Shira had conditioned the employment on her participation in certain tests. Her narrative testimony illustrated the nature of the tests:

"He said he would have to have vaginal smears and that he wanted to do a complete examination of [me] and take pictures of this and take pictures of taking

the vaginal smears. These tests were going to have to be taken as a condition of [my] employment."

The remaining three female witnesses had been patients of the appellant. Each had been subjected to a breast examination by the appellant. In each instance, Dr. Shira had advised them that there was a medical interrelation between their mouth area and their breasts. Each had become suspicious and complained.

Several of the doctors who testified on behalf of Miss Hubin did so as family physicians of certain of the female witnesses. Their testimony regarded complaints they had received from these ladies regarding Dr. Shira's conduct. For example, Dr. Baum testified that he was the physician of one of the female witnesses, and that said witness had, several years before, brought in a prescription which Dr. Shira had given her for her breasts. Dr. Baum testified that he checked her breasts, and found no real reason for that prescription.

Others of the doctors testified as to conversations had with fellow doctors concerning Dr. Shira. For example, Dr. Holman testified as to a discussion he had with Dr. Stockwell: "Well, Dr. Stockwell said that it had been brought to his attention that several young ladies had had bad experiences [with Dr. Shira]." Dr. Holman also testified that he, in his capacity as an officer in the local medical society, had confronted appellant with these complaints, and that appellant had categorically denied them.

The thrust of Dr. Shira's version of what happened on that Saturday afternoon was that after he started Miss Hubin's car, he saw her no more. He admitted returning to his office shortly after 1:00 p.m., but stated the purpose of his return was to keep an appointment he had with a Mr. and Mrs. Eugene Smith, some patients. (Mr. Smith testified that no such appointment existed.) Dr. Shira categorically denied that he so much as saw Miss Hubin that afternoon.

Appellant further testified that at the time the alleged assault and battery occurred (approximately 1:30 p.m.), he was just getting home from the Smith appointment no-show. He specifically recalled the time, because his daughter had been waiting for him so she could use his car. After getting home, and after his daughter took the car, Dr. Shira spent most of the remainder of the afternoon shopping with his wife. Dr. Shira's testimony along these lines was, in all respects, corroborated by his wife, Betty,

and his 18-year-old daughter, Penny. Likewise, Mrs. John Sherer (a former employee of Dr. Shira) and her husband both testified that they "saw both Dr. and Mrs. Shira at the Mini Mall, a shopping center in Dodge City, Kansas, on March 31, 1973, at about two o'clock" in the afternoon.

We will first consider appellant's points on appeal 1 and 2 together, as they deal with the court's alleged error in overruling defendant's objections to the admission of the testimony of the four female witnesses and the testimony of Dr. Conard, Dr. Stockwell, Dr. Holman and Dr. Baum, in that such testimony was improperly admitted by the trial court in violation of K.S.A. 60-445 and 60-455. The appellant, as each of the witnesses proceeded to testify, duly objected, stating that this evidence was generally irrelevant and immaterial and should not be admitted, and further objected to this testimony on the grounds that it was prejudicial to the appellant's cause of action, and that such prejudice outweighed any probative value the testimony might have. Appellant also asserts that such testimony was improper because it could cause a jury to infer a disposition on the part of the appellant herein to commit sexual offenses.

K.S.A. 60-445 reads as follows:

"Except as in this article otherwise provided, the judge may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

At this point, it needs to be stressed that the record is abundantly clear that during the course of pretrials, the names of the witnesses here involved were called to the attention of the appellant, and that the general nature of their testimony was known by appellant's counsel long before trial. Further, the court requested briefs from the attorneys regarding the admissibility of this evidence, and concerning the feasibility of giving an instruction covering the admissibility and limitation of the use of this evidence by a jury. The attorney for the appellant failed to submit such a brief.

Thus, we hold that the trial judge's admission of this testimony in no way unfairly or harmfully surprised appellant.

K.S.A. 60-455 reads, in pertinent part, as follows:

". . . [E]vidence that a person committed a . . . civil wrong on a specified

occasion, is inadmissible to prove his or her disposition to commit . . . civil wrong as the basis for an inference that the person committed another . . . civil wrong on another specified occasion but, subject to K.S.A. 60-445 . . . such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

This particular section of the statute has had extensive litigation in Kansas. However, this specific question as it relates to a civil matter is one of first impression. Here, we have a civil action dealing with alleged improper sexual activities and fraudulent conduct on the part of the appellant in seeking acquiescence on the part of the appellee to participate in the activities. Regarding civil actions, the Kansas court spoke to this matter in the case of *Frame, Administrator v. Bauman,* 202 Kan. 461, 449 P.2d 525. The court there cited 32 C.J.S. Evidence, Sec. 578, page 703:

"The trial court has a wide discretion with respect to the admission of evidence of similar acts or occurrences as proof that a particular act was done, or that a certain occurrence happened."

The court, in *Frame,* supra, further stated:

"*In a civil action, the trial court has wide discretion* with respect to admitting evidence of similar acts or occurrences as proof that a particular act was done or a certain occurrence happened, and its ruling in connection therewith will not be disturbed on appeal in the absence of a showing that its discretion has been abused." (Syl. 3. Emphasis supplied.)

The court at syllabus 4 of *Frame,* supra, also stated:

"The trial court, in ruling upon the admission of evidence of similar acts in a civil case, pursuant to K.S.A. 60-455, may take into consideration not only the extent of similarity, and the presence or absence of modifying conditions, but also the inconvenience resulting from trial of collateral issues which lengthen the trial itself and the possibility of surprise which might result to the opposing litigant to his prejudice."

Also, the Kansas Court has spoken relative to cases involving improper sexual conduct or activity on the part of the defendant. Though these cases have generally been criminal matters, the court apparently has taken the position that a broader, open-door view is proper so far as the admission of evidence of this nature is concerned, when given for the purpose of showing intent or plan of operation. (*State v. Hampton,* 215 Kan. 907, 529 P.2d 127; *State v. Gonzales,* 217 Kan. 159, 535 P.2d 988.) Also, the element of fraud is here involved, and in civil actions involving fraud,

evidence of past conduct of a similar nature is proper. In *Culp v. Bloss*, 203 Kan. 714, 457 P.2d 154, the court said:

"In civil actions involving fraud, evidence of the same or similar fraudulent representations made to others than the plaintiff is competent and relevant for the purpose of establishing the elements of motive and intent to defraud under the provisions of K.S.A. 60-455." (Syl. 3)

As can readily be seen, the evidence here offered and admitted by the trial court, and objected to by the appellant, does not fall within the realm of the exclusion part of K.S.A. 60-455. We believe that no abuse of discretion is shown by the admission of such evidence. We are convinced that, in a civil action, evidence of prior civil wrongs is clearly admissible when, as here, such evidence is offered to prove motive, opportunity, intent, preparation, plan and knowledge. We feel that the spirit of 60-455 mandates the admission of such evidence. Our feelings find support in the very recent case of *State v. Henson*, 221 Kan. 635, 562 P.2d 51, where a situation similar to this case existed. Henson was charged with murder and had sexually assaulted his victim. During the trial, the judge had allowed testimony as to prior civil wrongs which were sex-related. The court had little difficulty in affirming the lower court's admission of such testimony. The court examined the similarities between the past civil wrongs and the crime itself. The court said:

". . . Finally, and most probative of all of these similarities because of its highly individualistic character, there is evidence from which it may be inferred that each attack was partially motivated by or connected with sexual desires." (p. 645)

If the admission of such evidence is perfectly proper in a criminal case (where the defendant's liberty is at stake), so much more is the appropriateness of such evidence existent in a civil case.

We next consider whether the court erred in giving instructions numbered 1 and 17. Number 1 was given to the jury prior to the commencement of the presentation of evidence by the appellee. Number 17 was substantially the same, and was given in the body of the instructions at the close of all of the evidence. Instruction number 1 read as follows:

"Ladies and gentlemen you are instructed that under Kansas Code of Civil Procedure certain evidence is permissible to be introduced in the trial of this case to show that on other occasions, the defendant committed other acts similar to those set forth in the petition in this case, and in this connection, you are

instructed that even if you believe such evidence and testimony to be true, it is not to be considered by you as any evidence of the commission of the acts of the defendant which are complained of by the plaintiff and that such evidence standing alone, is insufficient to support any verdict for the plaintiff.

"This evidence is received and is to be considered by you only for its value, if any, as circumstances bearing upon the question of the defendant's intentions, motives, opportunities, preparations, plan, knowledge, identity or absence of mistake or accident, as such matters relate and are relevant to the complaint of the plaintiff.

"This evidence should be considered along with all of the other evidence for that purpose only and should be disregarded for any other purpose."

The rule in Kansas as to instructions to be given regarding K.S.A. 60-455 evidence was well stated in *State v. Bly*, 215 Kan. 168, 523 P.2d 397:

"7. The limiting instruction should not be in the form of a 'shotgun' which broadly covers all of the eight exceptions set forth in 60-455. An instruction concerning the purpose of evidence of other offenses should only include those elements of K.S.A. 60-455, which appear to be applicable under the facts and circumstances. Those elements which are obviously inapplicable should not be instructed upon. . . ." (p. 176)

The record in this case further indicates that the appellant failed to object to the instructions of which he now complains, and that he failed to offer any substitute instructions to be used by the court. In *Hagood v. Hall*, 211 Kan. 46, 505 P.2d 736, the court said at syllabus 1:

"Instructions to the jury become the law of the particular case and are controlling on appeal unless they are objected to either directly or by requesting substitute instructions."

Also, in *Franklin v. Northwest Drilling Co., Inc.*, 215 Kan. 304, 524 P.2d 1194, the court said:

". . . A party on appeal may not be heard to complain of an instruction given by the trial court to which no objection was made unless it is erroneous as a matter of law. . . ." (p. 309)

It should be further noted that in *Patte v. Kottwitz*, 219 Kan. 308, 548 P.2d 480, the court said:

". . . [T]his court has ruled that whether the trial court erred in giving an instruction over objection is not reviewable unless all the instructions given are made a part of the record, except where the challenged instruction is a clear and prejudicial misstatement of the law. . . ." (p. 309)

As has previously been stated, objection was not made by the appellant to these instructions, nor have all the instructions been presented in the record on appeal.

The court finds that such an objection to this instruction as being improper and prejudicial has not been shown by the appellant, that the instruction as given was not a clear misstatement of the law, and that the substantial rights of the appellant were not prejudiced. Therefore, no error is shown.

The final question on appeal raised by the appellant was whether or not the verdict was excessive. Here, the appellee was awarded $20,000 actual damages and $35,000 punitive damages. The appellant contends that the verdict was so excessive as to indicate passion and prejudice on the part of the jury.

The rule in this regard was most recently stated in *Kirk v. Beachner Construction Co., Inc.*, 214 Kan. 733, 522 P.2d 176, as follows:

"Where the charge of excessive verdict is based on the passion or prejudice of the jury and depends for support solely on the size of the verdict, the trial court will not be reversed for refusing a new trial, nor will a remittitur be ordered, unless the amount of the verdict in the light of the evidence shocks the conscience of the appellate court." (Syl. 1)

The verdict does not shock the conscience of this court, but in fact seems reasonable and justified in light of the evidence and the financial circumstances of the defendant.

The appellant has failed to meet his burden of proof on the four questions of alleged error by the trial court.

Judgment is affirmed.