(580 P.2d 1357)
No. 49,216

RICHARD W. GEORGE, *Appellee,* v. DAN BOLEN, J. DONALD WILLIAMS, CHARLES STOVER, d/b/a BOLEN-WILLIAMS, REALTORS, a partnership; *Appellants,* ROBERT W. MERMIS and CHARLES STOVER, d/b/a M & S INVESTMENTS, a partnership, *Defendants.*

Opinion filed June 16, 1978.

*James P. Mize,* of Clark, Mize & Linville, Chartered, of Salina, for appellants.

*Clarence L. King, Jr.* and *David S. Knudson,* of King, Stokes, Knudson & Nitz, Chartered, of Salina, for appellee.

*Gerald L. Goodell,* of Goodell, Cogswell, Stratton, Edmonds, Palmer & Wright, of Topeka, for *amicus curiae* Kansas Association of Realtors.

Before REES, P.J., SWINEHART and MEYER, JJ.

REES, J.: This is an action for breach of fiduciary duty allegedly owed plaintiff by the appellants (hereafter "defendants"), who were real estate brokers engaged in business as partners. Judgment was entered upon jury verdict for $180,000 compensatory damages and $184,647 punitive damages. Defendants appeal. We affirm as to the compensatory damages and, subject to acceptance of remittitur, reverse for new trial as to punitive damages.

The case was tried on the theory that defendant Williams had undertaken to act as plaintiff's agent and that the fiduciary duty arising by reason of that agency relationship was breached to plaintiff's damage. Defendants argue that (1) neither defendant Williams nor the partnership was the agent of plaintiff because there was no contract with plaintiff and (2) the damages awarded are not supported by the evidence. These arguments permeate and are the theses underlying all of plaintiff's variously stated issues on appeal. Upon extended and thorough study and consideration of the record on appeal, the briefs and arguments of counsel, we conclude our determinations of these arguments are dispositive of all issues on appeal. However, we will discuss other incidental and related arguments made by defendants.

The case as tried is aptly described by the following portions of the trial court's Instruction No. 2:

"In this case the plaintiff claims that the defendant J. Donald Williams agreed to represent plaintiff as his agent in an effort to purchase certain land owned at that time by one Dwight Tolle; That the defendant Williams was acting as one of the partners of a real estate agency known as Bolen-Williams Realtors a partnership consisting of the defendants Williams, Dan Bolen and Charles Stover; That the defendants obtained a listing of the property for sale at the price of $178,000.00, an amount agreeable to the plaintiff; That the plaintiff was never notified of the listing of the property for sale and that the defendant Stover and one Robert W. Mermis, who were partners in an enterprise known as M & S Investments, purchased the property from the owner without notice to the plaintiff and in violation of the responsibilities and duties of the defendants, Stover, Bolen and Williams as partners in Bolen-Williams Realtors, to the plaintiff as his agents.

"The plaintiff further claims that the action of the defendants was malicious & intentional.

"The plaintiff claims that as a result of the acts of the defendants he sustained damages in the amount of $253,310.00 and that he is entitled to punitive damages of $1,000,000.00.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The parties stipulate and agree that at the times material in this case the defendants Dan Bolen, J. Donald Williams and Charles Stover were partners in the Bolen-Williams real estate agency and that J. Donald Williams was acting as agent for Bolen-Williams Realty;

"That the legal description of the property involved is not in dispute and that prior to June 21, 1975 it was owned by Dwight Tolle;

"That J. Donald Williams did obtain a listing on the property on or about June 21, 1975 for a sale price of $178,000.00;

"That the property was purchased on or about June 23, 1975 by Robert W. Mermis and defendant Charles Stover d/b/a M & S Investments;

"That the plaintiff was not notified by any of the defendants that the listing of the property had been obtained until after June 23, 1975.

"The defendants deny the . . . allegations [not admitted by the foregoing stipulations] . . . and further state that the plaintiff failed to mitigate his alleged damages according to law."

It is appropriate in considering defendants' arguments concerning the existence of a contract between the parties to review prior case law relating to the nature and existence of fiduciary duty arising out of the principal and agent relationship and the necessity of an underlying contract.

Most recently it was held in *Sanders v. Park Towne, Ltd.*, 2 Kan. App.2d 313, 578 P.2d 1131 (1978), as follows:

"It is well settled that 'the relation existing between a principal and agent is a fiduciary one demanding conditions of trust and confidence.' *Merchant v. Foreman,* 182 Kan. 550, Syl. 2, 322 P.2d 740 (1958). See, also, *Kline v. Orebaugh,* 214 Kan. 207, 210, 519 P.2d 691 (1974) and *Wolcott & Lincoln, Inc. v. Butler,* 155 Kan. 105, Syl. 1, 122 P.2d 720 (1942). '[I]n all transactions concerning and affecting the subject matter of his agency, it is the duty of the agent to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal. . . .' *Merchant v. Foreman,* supra at 556. The agent must give the principal the benefit of all his knowledge and skill and cannot withhold or conceal information from the principal. *Ibid.*" (p. 317.)

In *Kline v. Orebaugh,* 214 Kan. 207, 519 P.2d 691 (1974), it is said:

". . . The relationship of principal and agent is a fiduciary one, and if a wrong arises because of the conduct of the agent the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the *cestui que trust.* (*Wolcott & Lincoln, Inc. v. Butler,* 155 Kan. 105, 122 P.2d 720.) . . . Where a trustee violates any duty which he owes to the beneficiary he is guilty of a breach of trust and he is liable to the beneficiary to redress that breach of trust." (pp. 210-211.)

Much of the case law dealing with the principal and agent relationship is reviewed in *Merchant v. Foreman,* 182 Kan. 550, 322 P.2d 740 (1958):

"As preliminary to discussing the first point, we refer to well-established rules applicable to its disposition: (1) the relation of principal and agent can only be terminated by the act or agreement of the parties to the agency or by operation of law, and an agency, when shown to have existed, will be presumed to have continued, in the absence of anything to show its termination, unless such a length of time has elapsed as destroys the presumption (2 Am. Jur., Agency, § 35, p. 36; 8 Am. Jur., Brokers, § 38, p. 1007; 2 C.J.S., Agency, §§ 68, 70, 81, pp. 1148, 1151, 1170; 12 C.J.S., Brokers, § 16, pp. 43, 44); (2) the relationship existing between a principal and agent is a fiduciary one demanding conditions of trust and confidence which require of the agent the same obligation of individual service and loyalty as is imposed upon a trustee in favor of his beneficiary (*Gillies*

*v. Linscott*, 94 Kan. 217, 219, 146 Pac. 327; *Wolcott & Lincoln, Inc., v. Butler*, 155 Kan. 105, 122 P.2d 720; 2 Am. Jur., Agency, § 252, p. 203; 3 C.J.S., Agency, § 139, pp. 10-11), and that in all transactions concerning and affecting the subject matter of his agency, it is the duty of the agent to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal (*Gillies v. Linscott*, supra; *Wolcott & Lincoln, Inc., v. Butler*, supra; 2 Am. Jur., Agency, § 252, p. 203; 3 C.J.S., Agency, § 138, pp. 6-7); (3) where a fiduciary relationship is established between the parties the law views with suspicion and scrutinizes very closely all dealings between them in the subject matter of the agency to see that the agent has dealt with the utmost good faith and fairness, and that he has given the principal the benefit of all his knowledge and skill, and, if it appears that the agent has been guilty of any concealment or unfairness, or if he has taken any advantage of his confidential relation, the transaction will not be allowed to stand (3 C.J.S., Agency, § 145, p. 26; 2 Am. Jur., Agency, §§ 252, 254, 260, pp. 203, 205, 209; 12 C.J.S. Brokers, § 41, pp. 96, 98; 8 Am. Jur., Brokers, §§ 86, 88, pp. 1035, 1037); and (4) one who acts as an agent and also deals with his principal with respect to the subject matter cannot take advantage of his principal by withholding from him any information within his knowledge, including the value of the property, which might have a bearing upon the desirability of the principal to make the trade (8 Am. Jur., Brokers, § 86, p. 1035; 3 C.J.S., Agency, §§ 139, 145 a, pp. 9, 27; 2 Am. Jur., Agency, § 260, p. 209; 12 C.J.S., Brokers, §§ 41, 47, pp. 96, 113.) . . ." (pp. 555-556.)

A principal and agent relationship, specifically in a case such as the one before us, exists only by virtue of contract.

"The relationship between a seller and a broker is that of agency; agency exists only by virtue of contract, express or implied; and whether there is a binding contract creating an agency relation must be determined by application of the same rules which pertain to contracts generally." *Lord v. Jackman*, 206 Kan. 22, Syl. 2, 476 P.2d 596 (1970).

"The primary relation, as between customer and real estate broker, is that of agency, and the general rules of law applicable to principal and agent govern their rights and liabilities. Furthermore, agency can result only from contract, express or implied, and in determining whether a valid contract has been entered into, the rules which pertain to contracts generally are applicable. There must be consideration, mutuality and a meeting of the minds as to essential matters. Meeting of the minds may be shown by implication, by conduct of the parties. Like other features essential to a cause of action, the burden of establishing agency is upon the party asserting it. (*Patee v. Moody*, 166 Kan. 198, 199 P.2d 798.)" *Hiniger v. Judy*, 194 Kan. 155, 158, 398 P.2d 305 (1965).

With regard to appellate review, we are necessarily mindful of the following:

"While the determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove its existence is a question of law, the weight to be given evidence and the resolution of conflicts therein are functions of the trier of facts. . . . However, under well-established rules of appellate review this court disregards any conflicting evidence or inferences

which might be drawn therefrom and accepts as true the evidence, and all inferences to be drawn therefrom, which support or tend to support the findings of the trial court. (*Farmers State Bank of Ingalls v. Conrardy,* 215 Kan. 334, 524 P.2d 690; and *Morris v. Hoesch,* 204 Kan. 735, 466 P.2d 272.)" *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, 371, 548 P.2d 719 (1976).

Our function is to determine if the record reveals any substantial competent evidence upon which a finding of agency could be based, not to decide whether, under proper instructions relating to the law of principal and agent, it actually did exist as a matter of fact. *Carver v. Farmers & Bankers Broadcasting Corp.,* 162 Kan. 663, 672, 179 P.2d 195 (1947). The existence or non-existence of an agency relationship between these parties being a question of fact, we are limited in our review to a determination of whether the implicit jury finding that an agency relationship did exist is supported by the evidence. *Kaw Valley State Bank & Trust Co. v. Riddle,* 219 Kan. 550, Syl. 9, 549 P.2d 927 (1976); *State v. Holt,* 221 Kan. 696, Syl. 3, 561 P.2d 435 (1977).

There was submitted to the jury by satisfactory instructions the question of the existence of a contract between plaintiff and Williams. The jury was instructed as to all elements necessary to proof of, and existence of, a contract.

When all is said and done, the contention of defendants on appeal is that there was no evidence to support the existence of a contract. Defendants say there was no proof of mutuality of obligations. Defendants particularly argue there was no evidence of an obligation owed by plaintiff.

We find that although the evidence was conflicting, there was at least some evidence to support plaintiff in this regard. In his testimony, plaintiff stated he initially went to Williams "to see about him representing me to acquire [Tolle's] property or possibly to purchase this property." Plaintiff "contacted Mr. Williams to see about if there was a possibility of securing this property in my behalf from Mr. Tolle." He testified there was no question in his mind that Williams was representing him as to the Tolle property. Twice in his testimony plaintiff indicated he was willing to purchase the Tolle property if defendant Williams could arrange a sale at a price between $150,000 and $200,000. Plaintiff testified as follows concerning a conversation he had with Williams in early 1975;

"Q. (By Mr. King): Anything else about the conversation concerning financing?

"A. I'm—concerning finances?

"Q. Yes.

"A. Just that we had talked about that, that in all probability, if he was willing to sell, that it would probably sell in the range of one-hundred-fifty (150) to two-hundred thousand dollars ($200,000.00), and that I was willing to purchase someplace in that range."

During cross-examination plaintiff testified as follows:

"Q. Okay. Now, just what, sir, just what do you claim that you obligated yourself to do in your conversation with Don Williams in late January or early February of 1975?

"A. I had asked Don to find out whether or not he was willing to sell so that I could exercise, if it was within what I thought to, thought the value of the property was; to exercise the purchase of it—yes, sir."

Although there is other conflicting testimony in the record and even some contrary admissions by plaintiff, a fair conclusion from the foregoing testimony would be that plaintiff was willing to purchase the property at a price between $150,000 and $200,000 and communicated that intention to defendant Williams. There was evidence plaintiff considered himself obligated to buy the property if a sale could be arranged within the range discussed.

Although perhaps "thin," we consider the foregoing to be sufficient evidence to sustain on appeal the finding that a contract existed.

It is argued by defendants that plaintiff should not be afforded the benefit of our foregoing conclusion by reason of application to this case of the familiar rule that admissions by a party are binding and conclusive on him if uncontradicted or unexplained, whether such admissions are elicited on direct examination or on cross-examination. *Simpson v. Davis,* 219 Kan. 584, 549 P.2d 950 (1976); *Carnegie v. Gage Furniture, Inc.,* 217 Kan. 564, 538 P.2d 659 (1975); *Stewart v. Gas Service Co.,* 252 F. Supp. 385 (D. Kan. 1966). We conclude from examination of the trial transcript that the purported admissions relied upon by defendants are not "uncontradicted." Plaintiff's testimony in its entirety was equivocal and contradictory. We do not find the rule as to the binding effect to be given admissions applicable here.

Defendants argue that even if an agency relationship did exist between defendant Williams and plaintiff, it was terminable at will without notice to the other party. Defendants apparently argue Williams terminated the relationship when, after talking

with Tolle, he reported back to plaintiff that Tolle was not interested in a sale.

Defendants rely upon the line of Kansas cases wherein it has been said that in absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party. *Johnson v. National Beef Packing Co.,* 220 Kan. 52, Syl. 1, 551 P.2d 779 (1976); *May v. Santa Fe Trail Transportation Co.,* 189 Kan. 419, 370 P.2d 390 (1962). Defendants cite 53 Am. Jur. 2d, Master and Servant, § 35, p. 111, for the proposition that, except where specifically provided by agreement or statute, neither an employer nor an employee is entitled to notice of termination of the employment.

The present case does not involve a simple employer-employee relationship but rather an agent-principal relationship. The rule as to duration and termination of an agency is well stated in *Merchant v. Foreman,* supra, as follows:

". . . [T]he relation of principal and agent can only be terminated by the act or agreement of the parties to the agency or by operation of law, and an agency, when shown to have existed, will be presumed to have continued, in the absence of anything to show its termination, unless such a length of time has elapsed as destroys the presumption. . . ." (p. 555.)

See, also, 3 Am. Jur. 2d, Agency, § 34, p. 440.

Not only is an agency, when shown to exist, presumed to continue, but in order to render effectual the termination of an agency before it would otherwise terminate, notice of termination must be given the parties affected by the termination. 3 Am. Jur. 2d, Agency, § 42, p. 446. The burden of proving a termination of agency is upon the party asserting it. 3 Am. Jur. 2d, Agency, § 34, p. 440. In canceling an agency for an indefinite term, notice to the other party is generally required. 3 Am. Jur. 2d, Agency, § 35, p. 441.

In the present case, there was no notice given by defendants terminating the agency relationship with plaintiff as to the Tolle property. Nor was there any occurrence or action by the parties which would overcome the presumption of continuing agency. Plaintiff and defendant Williams continued to confer about the acquisition of the Tolle property until shortly before its sale to Stover and Mermis. Plaintiff had five or six conversations with defendant Williams about the Tolle property from January to

May, 1975. The property was sold to Stover and Mermis on June 21, 1975. The evidence does not show that the agency relationship was terminated prior to June 21, 1975. Defendants did not prove termination.

It is argued by defendants that the compensatory damages judgment is not supported by the evidence. Defendants offered no damages evidence other than with regard to their claim that plaintiff failed to mitigate. Plaintiff was the only witness who testified as to damages. His testimony on direct examination was admitted without objection. In substance, he testified that in his opinion the combination of the Tolle property and the adjacent property owned by plaintiff had a value, as a single tract under single ownership, of approximately $110,000 in excess of the combined value of the two tracts under separate ownership ($350,000 less $240,000). He further testified that it was his opinion he lost anticipated net income of $143,000. Although on cross-examination defendants endeavored to impeach plaintiff's opinion as to the property values, there was no evidence to the contrary. Thus, the sole evidence of plaintiff's consequential damage was $253,000.

The $180,000 compensatory damage judgment is supported by, and within, the evidence and it must be affirmed. *Diefenbach v. State Highway Commission,* 195 Kan. 445, Syl. 1, 2, 447, 407 P.2d 228 (1965).

Defendants' reliance upon the rule in *Hadley v. Baxendale,* 9 Exch. Ch. 341, 156 Eng. Rep. 145, 5 Eng. Rul. Cas. 502 (1854), is misplaced. Defendants' liability is for breach of fiduciary duty, not for breach of contract.

Defendants also complain of the assessment of punitive damages. In *Sanders v. Park Towne, Ltd.,* supra, it is said:

". . . [P]unitive damages 'are permitted whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy. (*Malone v. Murphy,* 2 Kan. 250; *Albert Wiley v. Keokuk,* 6 Kan. 94; and *Cady v. Case,* 45 Kan. 733, 26 Pac. 448.) Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive or a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs. (*Stalker v. Drake,* 91 Kan. 142, 136 Pac. 912; see, also, *Townsend v. Seefeld,* 102 Kan. 302, 169 Pac. 1157; and 15 Am. Jur., Damages, § 266, 700.)' *Watkins v. Layton,* 182 Kan. 702, 705, 324 P.2d 130 (1958). In determining the amount of punitive damages, the trier of fact may consider 'the nature, extent and enormity of the wrong, the intent of the party committing it and generally all the

circumstances attending the particular transaction, together with any mitigating circumstances tending to reduce the verdict or wholly defeating the damages.' *Sweaney v. United Loan & Finance Co.,* 205 Kan. 66, Syl. 7, 468 P.2d 124 (1970). The trier may also take into account the 'probable expenses of litigation, including attorney's fees . . . where such expenses are not stated to be matters which must be made a basis of compensation.' *Brewer v. Home-Stake Production Co.,* 200 Kan. 96, Syl. 2, 434 P.2d 828 (1967)." 2 Kan. App. 2d at 318-319.

Defendants argue punitive damages are not recoverable for breach of contract. This argument does not wash. Still again, the theory upon which this case was tried was breach of fiduciary duty. True, whether there was a contract between plaintiff and Williams, and in turn the defendant partnership, was a basic question. But, proof of the contract was to establish the existence of fiduciary duty. The damages, both compensatory and punitive, were awarded for breach of fiduciary duty, not breach of contract.

Defendants further complain there was no evidence of financial worth of defendants. We take it they would say the lack of such evidence constitutes absence of an element of proof essential to an award of punitive damages. Evidence of financial worth of a defendant is admissible where punitive damages is in issue, but it is not required. *Carrick v. McFadden,* 216 Kan. 683, 689-690, 533 P.2d 1249 (1975). By his petition, plaintiff sought $1,000,000 in punitive damages. Defendants were vulnerable to an award in that amount throughout these proceedings. If defendants were impecunious, or even relatively so, vis-a-vis this prayer, it may have behooved them to advance their own evidence of their financial worth.

For the purpose of proving plaintiff's failure to mitigate his damages, defendants placed in evidence a letter from them offering to convey the Tolle property to plaintiff in consideration for his payment of $184,647 and dismissal of his lawsuit with prejudice. The letter offer was made eight days after suit was filed. It was promptly rejected by plaintiff. The jury was instructed to consider the letter only as it pertained to plaintiff's failure to mitigate his damages.

Defendants argue the coincidence of the amount of the punitive damages award and the amount stated in the exhibit establishes jury disregard of the court's instructions. We cannot find the coincidence, standing alone, fatal to the award. The amount has not been shown to be in contravention of the relevant principles and factors stated in *Sanders,* supra. We know of no authority

requiring reversal because of coincidence in amount as in the situation before us, and no such authority has been cited by defendants.

The defendants contend the award of punitive damages was excessive and based on the passion and prejudice of the jury. Where the charge of excessive verdict is based on passion or prejudice of the jury and depends for support solely upon the size of the verdict, the trial court will not be reversed for refusing a new trial, nor will a remittitur be ordered unless the amount of the verdict in the light of the evidence shocks the conscience of the appellate court. *Hubin v. Shira,* 1 Kan. App. 2d 203, 212, 563 P.2d 1079 (1977); *Kirk v. Beachner Construction Co., Inc.,* 214 Kan. 733, Syl. 1, 552 P.2d 176 (1974). It is our conclusion that the punitive damages award of $184,647 in this case is excessive and should be reduced to $35,000 upon the condition that the plaintiff accept the reduced amount of punitive damages in writing within ten days after this decision becomes final, by filing his acceptance with the clerk of the district court, or, upon his failure to accept the remittitur within the time allotted, the defendants be granted a new trial on the issue of punitive damages.

We have considered the defendants' other contentions of error. Those not discussed are principally matters of claimed trial error because of which defendants assert they are entitled to a new trial. Assuming but not deciding such contentions to be meritorious, we find none of these claimed errors, individually, collectively within themselves, or collectively with the issues we have discussed, require reversal.

An *amicus curiae* brief was filed raising an issue not presented in the briefs of the parties and which does not appear to have been before the district court. This issue is not discussed since our rule is that an *amicus curiae* brief may not raise such issues. *Cook v. Dobson Sheet Metal Works,* 157 Kan. 576, 578, 142 P.2d 709 (1943); *State, ex rel., v. Hines,* 163 Kan. 300, 323, 182 P.2d 865 (1947); *Hensley v. Board of Education of Unified School District,* 210 Kan. 858, 864, 504 P.2d 184 (1972).

The judgment of the trial court for compensatory damages is affirmed. The judgment for punitive damages is reversed for new trial subject to plaintiff's acceptance of remittitur.